## FREEDMAN'S SAVINGS & TRUST COMPANY *v.* EARLE.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Argued February 1st, 1884.—Decided March 10th, 1884.

*Judgment Lien on Equity of Redemption.*

It was decided in *Morsell* v. *First National Bank*, 91 U. S. 357, that in the District of Columbia, following the laws of Maryland, judgments at law were not liens upon the interest of judgment debtors who had previously conveyed lands to a trustee in trust for the payment of a debt secured thereby. It is now decided that the creditor of such judgment debtor, by filing his bill in equity to take an account of the debt secured by the trust deed, and to have the premises sold subject thereto and the proceeds of the sale applied to the satisfaction of the judgment, may obtain a priority of lien upon the equitable interest of the judgment debtor in the property, subject to payment of the debt.

The doctrine of equitable assets considered and the English and American cases reviewed.

The appellee recovered a judgment against Robert P. Dodge in the Supreme Court of the District of Columbia on January 4th, 1878, for $7,700, with interest and costs, which was revived April 2d, 1879, and on which a *fi. fa.* was issued April 9th, 1879, and returned *nulla bona.*

On June 1st, 1877, Dodge, the judgment debtor, being then seized in fee simple of certain real estate in the city of Georgetown in this district, conveyed the same by deed duly recorded to Charles H. Cragin, Jr., in trust, to secure to Nannie B. Blackford payment of the sum of $2,000, with interest, according to certain promissory notes given therefor, and which were indorsed to Charles H. Cragin.

On April 10th, 1879, the appellee filed his bill in equity; to

. which Dodge, Charles H. Cragin, Jr., Charles H. Cragin, and Nannie B. Blackford were made defendants, the object and prayer of which were to take an account of the debt secured by the trust deed, and, subject thereto, to have the premises sold and the proceeds of the sale applied to the satisfaction of the appellee's judgment.

The defendants having appeared and answered, a decree according to the prayer of the bill was rendered June 11th, 1879.

On December 27th, 1879, leave therefor having been obtained, the appellants filed a petition in the cause, setting forth the recovery of a judgment in their favor against the defendant Dodge in the sum of $7,386.47, with interest and costs, on February 11th, 1879, in the Supreme Court of the District of Columbia, and that on December 2d, a *fi. fa.* had been issued thereon and returned *nulla bona* December 19th, 1879; and praying that they may be made parties complainant in the cause; that the equitable interest of Dodge in the real estate described be subjected to the satisfaction of their judgment; that the same be sold, and the proceeds of sale be brought into court and distributed according to law. To this petition Dodge answered, admitting the recovery of the judgment as alleged.

On May 25th, 1880, the trustee appointed for that purpose under the decree of June 11th, 1879, reported a sale of the premises for $5,525, and the same, on June 25th, 1880, was confirmed. The cause was then referred to an auditor to state the account of the trustee to sell, whose report showed an appropriation of the proceeds of the sale, after payment of costs, in payment to that extent of the appellee's judgment. On exceptions to this report, a final decree confirming the same was made September 14th, 1880, which decree on appeal to the general term was affirmed on December 10th, 1880. From that decree this appeal was prosecuted.

*Mr. Enoch Totten* for appellant.

*Mr. Calderon Carlisle* and *Mr. J. D. McPherson* for appellee.

Mr. Justice Matthews delivered the opinion of the court. After reciting the facts in the foregoing language he continued :

As ground of reversal, it is assigned by the appellant that the proceeds of the sale of the equitable interest of Dodge, the judgment debtor, should have been distributed *pro rata* between the appellees and the appellants, instead of having been awarded exclusively to the appellee. It is contended on behalf of the appellants that the interest of the judgment debtor in the land, being an equity merely, is not subject to execution at law; and as it can be reached by judgment creditors only through the intervention and by the aid of a court of equity, it becomes of the nature of equitable assets, and when sold, the proceeds will be applied, according to the maxim that equality is equity, ratably among the creditors.

In the case of *Morsell* v. *First National Bank*, 91 U. S. 357, it was decided that, under the laws of Maryland in force in this District, judgments at law were not liens upon the interest of judgment debtors who had previously conveyed lands to a trustee in trust for the payment of a debt secured thereby. Mr. Justice Swayne said (p. 361): "The judgments in nowise affected the trust premises until the bill was filed. That created a lien in favor of the judgment creditors. There was none before." And it was accordingly held that in the distribution of the proceeds of sale the judgments must be postponed to debts secured by other deeds of trust made before the filing of the bill, but subsequent to the rendition of the judgments. But that decision leaves open the question arising here between judgment creditors seeking satisfaction in equity out of the debtor's equitable estate. It becomes necessary, therefore, to determine the nature of the right and the principle of distribution which arises from it.

At common law executions upon judgments could not be levied upon estates merely equitable, because courts of law did not recognize any such titles and could not deal with them. They could not be levied upon the estate of the trustee when the judgment was against the *cestui que trust* for the same reason; and when the judgment was against the trustee, if his legal estate should be levied on, the execution creditor could

acquire no beneficial interest, and if the levy tended injuriously to affect the interest of the *cestui que trust*, the latter would be entitled to relief, by injunction or otherwise, in equity. Lewin on Trusts, 181, 186; 2 Spence Eq. Jur. 39.

But as courts of equity regarded the *cestui que trust* as the true and beneficial owner of the estate, to whose uses, according to the terms of the trust, the legal title was made subservient, so in its eyes, the estate of the *cestui que trust* came to be invested with the same incidents and qualities which in a court of law belonged to a legal estate, so far as consistent with the preservation and administration of the trust. This was by virtue of a principle of analogy, adopted because courts of equity were unwilling to interfere with the strict course of the law, except so far as was necessary to execute the just intentions of parties, and to prevent the forms of the law from being made the means and instruments of wrong, injustice and oppression.

Thus equitable estates were held to be assignable and could be conveyed or devised; were subject to the rules of descent applicable to legal estates; to the tenancy by courtesy, though not to dower, by an anomalous exception afterwards corrected by statute, 3 and 4 Will. IV., c. 105; and were ordinarily governed by the rules of law which measure the duration of the enjoyment or regulate the devolution or transmission of estates; so that, in general, whatever would be the rule of law, if it were a legal estate, was applied by the court of chancery by analogy to a trust estate. 1 Spence Eq. Jur. 502.

As judgment creditors, after the statute of Westminster, 13 Ed. I, c. 18, were entitled, by the writ of *elegit*, to be put in the possession of a moiety of the lands of the debtor, until satisfaction of the judgment; and as it would be contrary to equity to permit a debtor to withdraw his lands from liability to his judgment creditors, this analogy was at an early date extended, so as to give to judgment creditors similar benefits in respect to the equitable estate of their debtors; and as the remedies in favor of judgment creditors by way of execution upon the legal estate of their debtors have been enlarged, they have been imitated by a corresponding analogy as to equitable

estates by courts of equity. This is in pursuance of the principle stated in a pregnant sentence by Lord Northington, in *Burgess* v. *Wheate*, 1 Eden, 177–261, where he said; "For my own part, I know no instance where this court ever permitted the creation of a trust to affect the right of a third party." Ib. 151. It is embodied in the maxim, *æquitas sequitur legem.*

It was accordingly held by Lord Nottingham, in the anonymous case cited in *Balch* v. *Wastall*, 1 P. Wms. 445, "that one who had a judgment, and had lodged a *fieri facias* in the sheriff's hands, to which *nulla bona* was returned, might afterwards bring a bill against the defendant, or any other, to discover any of the goods or personal estate of the defendant, and by that means to effect the same;" and although Lord Keeper Bridgman, in *Pratt* v. *Colt*, Freeman's Cas. in Ch. by Hovenden, 139, refused to permit a trust estate, which had descended to the heir, to be extended upon an *elegit* on a judgment against his ancestor, the reporter adds, "but note that this hath not been taken to be a good demurrer by the old and best practisers, as little according with good reason, for the heir-at-law is as much chargeable with the ancestor's judgment as the executor with the testator's debts, and so equity ought to follow the law." Three years subsequently to this decision, the Statute of Frauds, 29 Car. II., c. 3, was enacted, the 10th section of which made trust estates in fee simple assets for the payment of debts, and subject to an *elegit* upon judgment against the *cestui que trust.* But this statute did not extend to chattels real, to trusts under which the debtor had not the whole interest, to equities of redemption, or to any equitable interest which had been parted with before execution sued out. *Forth* v. *Duke of Norfolk*, 4 Mad. 503. The statute of 5 Geo. II. c. 7, which made lands within the English colonies chargeable with debts, and subject to the like process of execution as personal estate, was in force in Maryland; but as it did not interfere with the established distinction between law and equity, it did not permit an equitable interest to be seized under a *fieri facias.* *Lessee of Smith* v. *McCann*, 24 How. 398. But as the effect of these statutes was to enlarge the operation of executions upon legal estates, so the

corresponding equitable remedy as to equitable estates was also enlarged, and as to them equitable executions were enforced to the same extent to which executions at law were enforceable upon estates subject to seizure under them.

This mere equity, consisting in the right to obtain the aid of the court in subjecting the equitable interest of the debtor, not being a lien at law or a specific charge in equity, nevertheless constitutes such an interest, and creates such a privity, as entitles the judgment creditors to redeem a prior mortgage, and succeeding thus to the rights of the mortgagee in England, where the doctrine of tacking prevailed, he was permitted to hold the whole estate as security for his judgment also, even when, by virtue of an *elegit* at law, he would be entitled only to a moiety of the debtor's land. And he could file his bill to redeem without previously issuing an execution. *Neate* v. *Duke of Marlborough*, 3 Myl. & Cr. 407. The reason for this, assigned by Lord Cottenham in the case just cited, is, that inasmuch as the court finds the creditor in a condition to acquire a power over the estate by suing out the writ, it does what it does in all similar cases ; it gives to the party the right to come in and redeem other encumbrances upon the property.

But in other cases, when the object of the bill is to obtain satisfaction of the judgment, by a sale of the equitable estate, it must be alleged that execution has been issued. This is not supposed to be necessary wholly on the ground of showing that the judgment creditor has exhausted his remedy at law ; for, if so, it would be necessary to show a return of the execution, unsatisfied, which, however, is not essential. Lewin on Trusts, 513. But the execution must be sued out ; for if the estate sought to be subjected is a legal estate and subject to be taken in execution, the ground of the jurisdiction in equity is merely to aid the legal right by removing obstacles in the way of its enforcement at law. *Jones* v. *Green*, 1 Wall. 330 ; and if the estate is equitable merely, and therefore not subject to be levied on by an execution at law, the judgment creditor is bound nevertheless to put himself in the same position as if the estate were legal, because the action of the court converts the estate, so as to make it subject to an execution, as if it were

legal. ·The ground of the jurisdiction therefore is, not that of a lien or charge arising by virtue of the judgment itself, but of an equity to enforce satisfaction of the judgment by means of an equitable execution. And this it effects by a sale of the debtor's interest subject to prior encumbrances, or according to circumstances, of the whole estate, for distribution of the proceeds of sale among all the encumbrancers according to the order in which they may be entitled to participate. *Sharpe* v. *Earl of Scarborough*, 4 Ves. 538.

It is to be noted, therefore, that the proceeding is one instituted by the judgment creditor for his own interest alone, unless he elects to file the bill also for others in a like situation, with whom he chooses to make common cause; and as no specific lien arises by virtue of the judgment and execution alone, the right to obtain satisfaction out of the specific property sought to be subjected to sale for that purpose, dates from the filing of the bill. "The creditor," says Chancellor Walworth, in *Edmeston* v. *Lyde*, 1 Paige Ch. 637–640, "whose legal diligence has pursued the property into this court, is entitled to a preference as the reward of his vigilance ; " and it would "seem unjust that the creditor who has sustained all the risk and expense of bringing his suit to a successful termination, should in the end be obliged to divide the avails thereof with those who have slept upon their rights, or who have intentionally kept back that they might profit by his exertions when there could no longer be any risk in becoming parties to the suit." As his lien begins with the filing of the bill, it is subject to all existing encumbrances, but is superior to all of subsequent date. As was said by this court in *Day* v. *Washburn*, 24 How. 352 :

" It is only when he has obtained a judgment and execution in seeking to subject the property of his debtor in the hands of third persons, or to reach property not accessible to an execution, that a legal preference is acquired which a court of chancery will enforce."

· This is in strict accordance with the analogy of the law, as it was recognized that the judgment creditor who first extends

the land by *elegit* is thereby entitled to be first satisfied out of it. It is the execution first begun to be executed; unless otherwise regulated by statute, which is entitled to priority. *Rockhill* v. *Hanna*, 15 How. 189, 195; *Payne* v. *Drew*, 4 East. 523. The filing of the bill, in cases of equitable execution, is the beginning of executing it.

The passage cited from the opinion in *Day* v *Washburn*, *supra*, speaks of the preference thus acquired by the execution creditor as a legal preference. It was distinctly held so to be by Chancellor Kent in *McDermott* v. *Strong*, 4 Johns. Ch. 687. He there said: "But this case stands on stronger ground than if it rested merely on the general jurisdiction of this court, upon residuary trust interests in chattels, for the plaintiffs come in the character of execution creditors, and have thereby acquired, by means of their executions at law, what this court regards as a legal preference, or lien on the property so placed in trust;" and "admitting that the plaintiffs had acquired, by their executions at law, *a legal preference to the assistance of this court* (and none but execution creditors at law are entitled to that assistance), that preference ought not, in justice, to be taken away. Though it be the favorite policy of this court to distribute assets equally among creditors, *pari passu*, yet whenever a judicial preference has been established, by the superior legal diligence of any creditor, that preference is always preserved in the distribution of assets by this court." The decision in that case was made, giving the priority to the execution creditors who filed the bill, when, otherwise, by virtue of an assignment by the debtor who was insolvent, the proceeds of the equitable interest sought to be subjected would have been distributed ratably among all creditors.

This case, often cited and never questioned, shows that the doctrine of equitable assets, to which we are referred by the appellant as the ground of his claim, has no application to the case. Ordinarily and strictly, the term, *equitable assets*, applies only to property and funds belonging to the estate of a decedent, which by law are not subject to the payment of debts, in the course of administration by the personal representatives, but which the testator has voluntarily charged with the pay-

ment of debts generally, or which, being non-existent at law, have been created in equity, under circumstances which fasten upon them such a trust. Adams on Equity, 254. But, as was said by Chancellor Kent in *Williams* v. *Brown,* 4 Johns. Ch. 682, the doctrine "does not apply to the case of a debtor in full life, for there is no equitable trust created and attached to the distribution of the effects in the latter case." Property held by a trustee for the testator is legal assets, for, although the benefit of the trust, if resisted, cannot be enforced without equitable aid, yet the analogy of the law will regulate the application of the fund. To constitute equitable assets, the trust imposed by the party, or by the court, must be for the benefit of creditors generally.

It is true that in *Moses* v. *Murgatroyd,* 1 Johns. Ch. 119 (7 Am. Dec. 478), Chancellor Kent held surplus money arising from the sale of mortgaged premises to be equitable assets, but that was in a case where the mortgagor was deceased and the fund was in a court of equity for distribution, and when the judgment to which priority was refused was confessed by the administrator. In *Purdy* v. *Doyle,* 1 Paige, 558, the rule was stated by Chancellor Walworth, in these words:

"If it is such property as the judgment creditors could obtain a specific or general lien on at law, they are entitled to the fruits of their superior vigilance, so far as they have succeeded in getting such lien. But if the property was in such a situation that it could not be reached by a judgment at law, and the fund is raised by a decree of this court, and the creditors are obliged to come here to avail themselves of it, they will be paid on the footing of equity only."

But a specific lien, whether legal or equitable, on property liable as equitable assets, was always respected by courts of equity. *Freemoult* v. *Dedire,* 1 Peere Wms. 429; *Finch* v. *Earl of Winchelsea,* Ib. 277; Ram on Assets, 318. And Lord Chancellor Parker, in *Wilson* v. *Fielding,* 2 Vern. 763, 10 Mod. 426, drew the distinction between property which is assets in a court of equity only and certain property which a creditor cannot come at without the aid of a court of equity. In that case

the mortgage debt had been paid out of the personal estate by the executor, thus exonerating the mortgaged premises which had descended to the heir. The unsatisfied creditors filed a bill to require the heir at law to refund, which was "a matter purely in equity and a raising of assets where there were none at law."

And see *Atlas Bank* v. *Nahant Bank*, 3· Met. (Mass.) 581; *Codwise* v. *Gelston*, 10 Johns. 507, 522; *Tenant* v. *Strong*, 1 Richardson Eq. 221; 1 Story Eq. Jur. § 553; 2 White & Tudor's Lead. Cas. in Eq. pt. 1, 390.

We have already seen that the filing of a bill by an execution creditor to subject the equity of the debtor in his lifetime, created a lien and gave him a legal preference. And in the English chancery, although equities of redemption after the death of the mortgagor are classed as equitable assets, the rule of distribution *pari passu* is modified in its application to them in respect to judgment creditors by permitting them to retain their priority over other claims, because, if such priority were not allowed, the judgment creditor might acquire it by redeeming the mortgage. Adams Eq. 256. Legal assets, according to the definition of Mr. Justice Story, Eq. Jur. § 551, "are such as come into the hands and power of an executor or administrator, or such as he is intrusted with by law *virtute officii* to dispose of in the course of his administration. In other words, whatever an executor or administrator takes *qua* executor or administrator, or in respect to his office, is to be considered legal assets." And this is the modern doctrine in England. In *Lovegrove* v. *Cooper*, 2 Sm. & Giff. 271, it was held, for that reason, that the proceeds of real estate directed to be sold for the payment of debts, and paid by the purchaser into court, were legal and not equitable assets.

It follows from this, that in this country generally, where the real estate of a decedent is chargeable with the payment of debts, and, in case of a deficiency of personal property for that purpose, may be subjected to sale and distribution as assets, by the personal representative, in the ordinary course of administration, the distinction between legal and equitable assets has ceased to be important. In every such case the equity of re-

demption could only be applied after sale by the executor or administrator in the ordinary course of administration, subject to whatever liens may have been imposed upon it in the lifetime of the mortgagor, and among them, as we have seen, is that of an execution creditor who has filed his bill to subject it to the payment of his judgment. So, in other cases where the rule of equality in distribution, as to equitable assets, applies, as in cases of assignments by the debtor himself for the payment of debts generally, and in cases of bankruptcy and insolvency, except as otherwise expressly provided by statute, the estate passes, subject to existing liens, including that of an execution creditor who had previously filed a bill to subject the equitable interest of the debtor, and his priority is respected and preserved. The lien is given by the court in the exercise of its jurisdiction to entertain the bill and to grant the relief prayed for; and to distribute the proceeds of the sale for the benefit of others, equally with the execution creditor first filing the bill, would be to contradict the very principle of the jurisdiction itself, and defeat the very remedy it promised; for the fruits of litigation, according to the rule of equality, would have to be divided, not only with other judgment and execution creditors, but, as well, with all creditors, whether their claims had been reduced to judgment or not.

*For these reasons, the decree appealed from is affirmed.*