## GEORGE *et al.* *v.* ST. LOUIS CABLE & W. RY. Co.

*(Circuit Court, E. D. Missouri, E. D.* September 23, 1890.)

1. CREDITORS' BILL—DISTRIBUTION OF PROCEEDS—LIEN OF TAXES.
   Where the federal courts have appointed a receiver of the property of a judgment debtor in Missouri, and have ordered the property sold, and the receiver has been in possession thereof during the time when a levy might have been made thereon for taxes on the personalty, the court will direct the payment of such taxes out of the proceeds of the sale in preference to all other claims, though the sale was ordered to be made "subject to all liens for taxes," as taxes on personalty are not a lien thereon until levy under the tax-bill, in Missouri.

2. SAME.
   But as the state has a paramount lien for taxes on realty, and the sale was subject thereto, such taxes will not be ordered paid out of the proceeds.

3. SAME—WHO MAY SHARE IN DISTRIBUTION.
   Where the proceeds of a sale of a debtor's property on judgment creditors' bill are insufficient to pay the judgment creditors, and there has previously been no application to the payment of judgment creditors of any of the debtor's property which should have been applied to the payment of open accounts, the holders of such accounts cannot participate in the proceeds of the sale.

4. SAME—INTERVENTION.
   Where a bill to reach property which cannot be effectively reached at law is filed by certain judgment creditors for the benefit of all judgment creditors of defendant, and no order is made requiring others to intervene by a certain time or be barred of their rights, all judgment creditors who choose to intervene may share ratably with complainants in the proceeds of a sale of the property, even though some do not intervene until after the interlocutory decree ordering the sale.

5. SAME.
   It does not affect the right of such subsequent intervenors to share ratably that the bill prays that after a sale the proceeds may be distributed among the persons in whose behalf the suit is brought "according to their respective rights and equities," where the original complainants and prior intervenors had no prior lien on all the property sold when the bill was filed.

In Equity.

On the 17th of October, 1889, three non-resident judgment creditors of the St. Louis Cable & Western Railway Company filed a bill in behalf of themselves and all other judgment creditors against the railway company, to obtain the appointment of a receiver of the judgment debtor's property, and a decree for the sale of the same for the payment of their debts, according to the respective rights of the several creditors, as they might be adjudged. The bill stated, in substance, that the defendant company owned a railroad extending from a point within the city of St. Louis to Florissant, in the adjoining county of St. Louis; that it was largely indebted and insolvent, owing, among other debts, a debt of $1,000,000, which was secured by a mortgage lien on all of the defendant company's rights, property, and franchises; that the complainants had no adequate legal remedy to reach and sell the property of the company, because its road was located partly in the city and partly in the county of St. Louis, and,

under the laws of the state, could only be sold as an entirety; and that an execution sale, if attempted, would not convey a valid title to a large portion of the property. A receiver was appointed, as prayed for, to take possession of the property on the day the suit was filed. The case was brought to a hearing on bill and answer at the last term of court, and on the 24th of April an interlocutory decree was entered, directing a sale of all the defendant's property, subject to the lien of all existing mortgages thereon, and also "subject to all liens for taxes." By the terms of the decree, judgments to the amount of $255,214.75 were duly established as valid debts of the defendant company; that being the aggregate amount of the claims of all judgment creditors, including the original complainants, who had made themselves parties to the suit prior to the interlocutory decree. The court reserved to itself, however, the power, by further orders or decrees thereafter to be made, to determine all questions of priority, and all questions respecting the distribution of the fund that might be realized by the sale. The sale took place on the 20th of last June, and realized $150,000. After the entry of the interlocutory decree directing a sale, other judgment creditors of the railway company, owning judgments to the amount of about $20,000, filed intervening petitions in the cause, and asked to participate in the proceeds of the sale. Three of the petitions last mentioned were not filed until after the sale, and these represent judgments to the amount of $7,000. In addition to the judgment debts heretofore mentioned, there are now on file a number of unliquidated demands against the defendant company, aggregating something over $5,000. These demands, resting on open accounts against the company, were filed in this court, accompanied by intervening petitions praying an allowance and payment of the same, at various dates, both prior and subsequent to the interlocutory decree. The collector of the revenue for the city of St. Louis, on May 6, 1890, also presented an intervening petition, founded upon two tax-bills against the defendant company, for taxes assessed against it for the year 1889. One bill is for taxes on personal property, and is for the sum of $2,138.82. The other bill is for taxes due on realty, and is for the sum of $1,430.06. Several questions touching the right of these several classes of claimants to participate in the distribution of the fund realized by the sale of the defendant's property have been heretofore argued and are now to be determined.

Lee & Ellis and Smith & Harrison, for complainants.

Laughlin & Kern, for defendant.

Hitchcock & Finkelnburg, S. P. Galt, David Murphy, O. B. Givens, Rassieur & Schnurmacher, and E. C. Kehr, for intervenors.

THAYER, J., (after stating the facts as above.) 1. The first question in order is whether the state should be allowed a priority for either or both of the tax-bills? It seems to be the law in Missouri that for taxes assessed on personal property the state has no lien on the property until an actual levy has been made under the tax-bill. A sale made by an owner of personal property after taxes have been assessed against the same, and

prior to a levy, passes a good title to the vendee, unincumbered by a tax-lien.   *State* v. *Goodnow*, 80 Mo. 271; *Greeley* v. *Bank*, 98 Mo. 460, 11 S. W. Rep. 980.   Such being the local law with respect to taxation, it follows that the provision of the interlocutory decree directing a sale to be made "subject to all liens for taxes" is no obstacle in the way of allowing the state a priority as to the tax-bill against personalty, for as to such property there was no lien at the time of the sale; and, because the purchaser took the personal property unincumbered by a tax-lien, the state in all probability will lose the bill, unless the court directs its payment out, of the proceeds of the sale.   Inasmuch as the receiver appointed in this case had possession of the property on account of which the tax was imposed during the period within which the collector might have made, and probably would have made, a levy but for the existence of the receivership, it is plainly the duty of the court to see that the tax-bill against personalty is paid in preference to all other demands.   The appointment of a receiver and sale of property by a decree of this court, in a case of this character, will not be allowed to interfere with or to defeat the collection of the public revenue.   The bill against personal property will therefore be paid.

The tax-bill against real estate, as to which the state has a lien paramount to all other liens, stands on a very different footing.   The property was sold on the express condition stated in the decree,—that purchasers would take "subject to all tax-liens."   Bids were no doubt made with reference to that provision of the decree, and an order made at this time, directing the payment of the tax-bill in question out of the proceeds of the sale, would, in effect, change the terms of the sale.   The proceedings in this court have not interfered with the collection of the bill by the state, or in any manner impaired its security for the same, which is still ample to insure payment.   Under the circumstances, no obligation rests on the court to direct the payment of the tax-bill against realty out of the proceeds of the sale, and the collector will accordingly be left to enforce the lien of the state for that bill by the usual remedy.

2. The next question to be answered is whether persons who have intervened on open accounts against the railway company, either prior or subsequent to the interlocutory decree, are entitled to participate in the distribution of the proceeds of sale, the fund being inadequate to pay even the judgment creditors in full.   The bill in this case must be classified as a judgment creditors' bill, to reach property that either could not be reached by execution at law, or that could not be seized and sold under such process, so as to realize the full value of the judgment debtors' interest.   The fund in court, therefore, is not such a fund as is technically termed "equitable assets," and as to which the maxim applies that "equality is equity."   *Trust Co.* v. *Earle*, 110 U. S. 710–717, 4 Sup. Ct. Rep. 226.

I understand the doctrine to be well settled that the holder of an unliquidated legal demand—that is to say, a demand not reduced to judgment—cannot maintain such a bill as this, and cannot properly intervene in such a proceeding until his demand is reduced to judgment.   A court

of equity requires the validity and amount of a purely legal demand to be established by a suit at law, before lending its aid to reach property of the debtor, that cannot be effectually reached by execution or attachment. *Martin* v. *Michael*, 23 Mo. 50; *Dunlevy* v. *Tallmadge*, 32 N. Y. 459; *Turner* v. *Adams*, 46 Mo. 95; *Webster* v. *Clark*, 25 Me. 314; *Dodd* v. *Levy*, 10 Mo. App. 122, 123; *McDermutt* v. *Strong*, 4 Johns. Ch. 687.

There are one or two exceptions to the rule, covering cases where a creditor for any reason cannot sue at law; but the exceptions to the rule are unimportant so far as the case at bar is concerned.

It is not apparent to the court that the claims now under consideration derive any support from the doctrine announced by the supreme court of the United States in a series of cases beginning with *Fosdick* v. *Schall*, 99 U. S. 253, and ending with *Kneeland* v. *Trust Co.*, 136 U. S. 89, 10 Sup. Ct. Rep. 950. As already appears, this is not a bill by bondholders to foreclose a mortgage covering the entire property of a railroad company, and all of its future acquisitions of property, as well as the net income of the company. The case shows no application of earnings by the defendant company to the payment of claims of judgment creditors, that should of right have been otherwise applied to the payment of the unliquidated demands now on file. There has been no diversion of funds, such as a court of equity can remedy by using the funds in its hands to pay such demands. The fact seems to be that all the claimants stand on the same plane, save that some have been more expeditious in reducing their claims to judgment. All the demands—those that are liquidated and those that are unliquidated—are for money or materials supplied to the railway company to enable it to operate its road and discharge its duties to the public.

In cases like the one at bar, where the aid of a court of equity is sought by judgment creditors to reach property that cannot be reached by execution, the court does not proceed, when the property is in its hands, to distribute it ratably among all classes of creditors. On the contrary, it follows the law, and recognizes the priority that those judgment creditors who have moved in the cause would have obtained by the levy of an execution at the time of filing the bill, if no obstacles had stood in the way of the levy of such process. The filing of a bill by judgment creditors has often been termed an "equitable levy," entitling those who file the bill to priority. *Trust Co.* v. *Earle, supra; Pullis* v. *Robison*, 73 Mo. 201; *Rappleye* v. *Bank*, 93 Ill. 396; *Gordon* v. *Lowell*, 21 Me. 251; *Miers* v. *Turnpike Co.*, 13 Ohio, 197; *Jones* v. *Arkansas, etc., Co.*, 38 Ark. 17; *Edmeston* v. *Lyde*, 1 Paige, 637; *Sage* v. *Railroad Co.*, 125 U. S. 379, 8 Sup. Ct. Rep. 887.

I conclude, therefore, that the claimants on open account are not entitled to participate in the proceeds of the sale, inasmuch as the fund is insufficient to pay the judgment creditors.

3. The remaining question to be disposed of is one that arises between the judgment creditors themselves. The original complainants concede, or rather consent, that all judgment creditors who came in prior to the interlocutory decree, and whose judgments were established by that de-

cree, may participate *pro rata* in the distribution to be ordered; but they contest the right of those judgment creditors to participate in the distribution who did not come forward until the right to relief had been established by the interlocutory decree.    In the case of *Trust Co.* v. *Earle, supra,* a judgment creditor filed a bill to obtain a sale of the judgment debtors' equity of redemption in certain land, which, by the law of Maryland, could not be levied upon or sold under execution.    Subsequently, and after an interlocutory decree had been entered, another judgment creditor intervened in the cause, and claimed the right to an equal participation in the proceeds of the sale.    The right in question was denied, the court holding, after a very full review of the authorities, that the first creditor was entitled to priority.    This case fully sustains the contention that those judgment creditors who did not come forward until a decree was entered cannot share ratably in the distribution of the fund with those creditors whose judgments were established by the decree.    It is true that the bill recites that it is filed in behalf of the three original complainants, and all other judgment creditors, but this recital cannot be fairly construed as a consent that parties may come in at any stage of the proceedings, even after a decree establishing the complainants' rights, and share equally in the fruits of the litigation.    *Edmeston* v. *Lyde, supra.*

Upon the whole, I conclude that those creditors whose judgments were established by the decree are entitled to a priority.    From what has been heretofore said, it follows, also, that the St. Louis Ore & Steel Company is not entitled to any preference over other judgment creditors whose demands were established by the decree.    An order of distribution may be prepared, in accordance with these views, and, if deemed necessary, a reference may be made to a master to apportion the fund, and compute how much is due to each creditor after payment of all costs.

---

### ON REARGUMENT.

#### (November 24, 1890.)

THAYER, J.  The question considered in the third paragraph of the foregoing opinion has been reargued.    In behalf of those judgment creditors who did not intervene until after the interlocutory decree had been entered, it is strenuously contended that they have the right to share in the distribution of the fund on an equality with those who intervened prior to the decree.    Many authorities are cited and relied upon, particularly *Jones* v. *Davenport,* 19 Atl. Rep. 22, and *Johnson* v. *Waters,* 111 U. S. 640, 4 Sup. Ct. Rep. 619.    Both of the cases last mentioned were bills filed by creditors of a deceased person against his executor, to obtain payment of their debts out of the estate of the deceased.    Incidentally, the bills prayed to have certain fraudulent conveyances set aside that had been made by the deceased in his life-time, or by the executor subsequent to his death.    But in both cases the object of the complainants was to obtain an account and distribution among creditors of

property·properly belonging to a dead man's estate, and liable for the payment of his debts; hence, each proceeding was a "creditors' bill," technically so termed, and was so treated by the court.    1 Story, Eq. Jur. §§ 546, 547.    When an estate is administered in chancery, as they were formerly very frequently administered by means of a "creditors' bill," creditors undoubtedly had the right to come in after decree, and prove their demands, and share ratably in the distribution of the fund.    The usual form of decree in such cases required the master "to take an account of all assets, (*quod computet,*) and give notice to all creditors to come in and prove their claims,"(Id. § 548; 2 Daniell, Ch. Pr. 1203, 1204;) and in such cases all creditors proving their claims were paid ratably out of the assets discovered and taken into the account, after prior judgment liens were satisfied.    The decree in such suits was regarded as a decree for the benefit of all creditors, and in the nature of a judgment for all who subsequently proved their debts before the master.    *Vide Thompson* v. *Brown,* 4 Johns. Ch. 620, where this subject is fully discussed.    In that class of cases it sometimes happened that creditors not guilty of negligence or laches were allowed to come in and prove their demands, even after the time limited by the notice to prove claims had expired, if any part of the fund for distribution remained in the custody of the court.    *Gillespie* v. *Alexander,* 3 Russ. 130; 2 Daniell, Ch. Pr. 1205.    Counsel for intervenors also cite and appear to rely upon the cases of *Williams* v. *Gibbes,* 17 How. 239, and *In re Howard,* 9 Wall. 175.    In the first of these cases, neither of which were creditors' bills, it was held, in substance, that after a court of equity by final decree has apportioned a fund belonging to several persons in common, among those supposed to be entitled to it, other persons having an interest in the fund, who were not parties to the original suit, and have not been guilty of negligence or laches, may maintain a bill against those who have received the fund, to recover their share; and in *Re Howard,* where a fund had been apportioned by a final decree, and other persons then filed a bill claiming a share of the fund, it was held that, inasmuch as the fund had not been actually distributed prior to the second suit, the court might properly suspend the execution of the first decree, although it had become final, until the second suit had been determined, and the right of the complainants therein had been adjudicated.    Some other cases have been cited, that arose under acts for liquidating the affairs of insolvent banks and insurance companies, which are not deemed important.

Now it is true, as has been urged, that the suit at bar is not a creditors' bill, but is a proceeding by judgment creditors to reach property that either could not be reached at all, or that could not be effectively reached by execution at law; and, in such cases as is sufficiently shown by authorities heretofore cited, the filing of a bill is an equitable levy, and entitles the complainants in whose behalf such a bill is first filed to a priority.    I have no doubt that the three complainants by whom the bill in this case was filed might have secured a priority by filing the same for their own benefit; but they did not do so.    By the very terms of the bill, they professed to be acting, not only for themselves, but "in

behalf of, all and singular, the other judgment creditors of the respondent." The effect was to waive the advantage they might have obtained by moving in their own behalf. The result is that the suit, in contemplation of law, has from the beginning been prosecuted by the original complainants in behalf of all judgment creditors who might elect to come in and take advantage of what had been done in their behalf. The sale ordered by the court under the interlocutory decree was likewise a sale for the benefit of all judgment creditors; it was in the nature of a sale of property *pendente lite,* for the benefit of a given class of creditors; and, while the interlocutory decree determined that the original complainants, and some others who had intervened, belonged to that class, it did not undertake to determine that they were the sole beneficiaries, and that there were no other creditors belonging to the class in whose favor the suit was instituted.

Another matter that cannot be overlooked is the fact that no order had been made, prior to the interlocutory decree, requiring persons in whose behalf the bill was filed to intervene by a given day, or be barred of their rights. Under all these circumstances, and in view of the strong disposition invariably shown by courts of equity to preserve the rights of parties rather than to forfeit them, unless there has been gross negligence or laches, I am compelled to hold that those judgment creditors of the defendant, who have intervened since the 24th of April last, when the interlocutory decree was entered, are entitled to a ratable share of the proceeds of the sale, if on an examination of their judgments before the master they are found to be valid.

After a more thorough consideration of the question, I am convinced that the former ruling is indefensible. The case of *Trust Co.* v. *Earle, supra,* does not sustain the former ruling, because the bill in that case was filed in behalf of the complainant alone, in consequence of which he secured a priority.

It is suggested by complainants' counsel that, although the bill in this case was filed in behalf of all judgment creditors, yet the prayer of the bill is, that after the sale the fund realized may be distributed among the parties in whose behalf the suit was brought, "according to their respective rights and equities." By reason of the form of the prayer for relief, it is suggested that the original complainants did not waive any of their rights; and, as the original complainants and those who intervened prior to the decree all hold judgments rendered at the October term, 1889, of the St. Louis circuit court, whereas the other judgment creditors hold judgments recovered at a subsequent term, it is argued that the former are entitled to priority on that ground. This suggestion would have some weight if it appeared that complainants, when the bill was filed, had, by virtue of their judgments, a lien under the statutes of Missouri on all of the property sold by order of this court, out of which the fund for distribution arises. But such is not the fact. The bill in this case did not allege the existence of such a lien, nor has the court by its previous decree so determined. According to the averments of the bill, the complainants were not entitled, under the laws of the state, to sell the defendant's railroad by execution under a judgment at law,

and on that ground they applied to this court for equitable aid. Now, conceding for the purposes of this case, but without deciding, that the complainants did have a judgment lien on the defendant's railroad, notwithstanding the fact that they could not sell it under execution, yet the fact remains that, by virtue of the decree obtained in this court, the defendant's franchises, and much other personal property of the judgment debtor, were sold, to which the lien of the judgments certainly did not extend. Furthermore, the fund in court which is to be distributed is made up in part of the earnings of the railroad while it was in the hands of the receiver. In view of these facts, there appears to be nothing in the suggestion last mentioned entitling the complainants, and those who intervened prior to April 24, 1890, to priority. They had no well-established legal lien when the bill was filed, affecting all of the property ultimately sold, which entitles them to any priority over subsequent judgment creditors, even though the prayer of the bill is so framed as to protect such a lien.

The previous order of distribution, made on the 23d of September, must be modified in accordance with these views.