# BABBINGTON

### *v.*

## WASHINGTON BREWERY COMPANY.

CREDITORS' SUITS; LIENS; PRIORITIES; APPELLATE PRACTICE.

1. A judgment creditor who files his bill in equity to subject the equitable interest of his debtor in mortgaged chattels to the satisfaction of his judgment upon which execution has been issued and returned *nulla bona,* acquires a lien from the time of the filing of the bill, which has priority over all subsequent liens, incumbrances or assignments, including claims of creditors who have obtained judgments since the filing of the bill and who have intervened and become parties complainant in the creditors' suit.

2. An appeal does not lie from an order overruling a motion to vacate or rescind a final order or decree in equity; but the appeal must be taken from the final order or decree.

No. 812. Submitted October 18, 1898. Decided December 9, 1898.

HEARING on an appeal by intervenors from an order overruling a motion to vacate or rescind a final order of distribution, in a suit in equity for the appointment of a receiver, for an injunction, etc. *Appeal dismissed.*

The facts are sufficiently stated in the opinion.

*Mr. Edwin Forrest* and *Mr. John E. McNalley* for the appellants.

*Mr. Arthur A. Birney, Mr. Henry F. Woodard, Mr. Bates Warren* and *Mr. Hayden Johnson* for the appellees.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The Washington Brewery Company filed its bill on the 20th of January, 1898, against John A. Boland, a mortgage and judgment debtor, and Patrick Gleason, a purchaser of

the mortgaged goods and chattels from Boland, for the purpose of securing the payment of its mortgage and judgment debt due from Boland.

The bill alleges that the plaintiff had recovered a judgment against Boland before a justice of the peace, on the 25th of September, 1897, for $294.45, upon which an execution was issued and returned *nulla bona.* That the plaintiff company, in October, 1896, had loaned the defendant Boland the sum of $400, for which it had taken his promissory note, payable on demand, and which was secured by a chattel mortgage, executed by Boland, of "all goods, chattels, implements, and other personal property, of every kind and description, contained in the premises No. 43 H street, N. W., in the city of Washington, including the barroom, fixtures, stock of wines, liquors, cigars, the good will, lease and license, etc.," and which chattel mortgage was duly recorded. That notwithstanding the goods and chattels and personal effects were thus charged with the mortgage to secure the $400, with interest, the defendant Boland had contracted to sell, and was about to deliver to the defendant Gleason, the said goods and chattels and personal effects, and to receive the price therefor. That Boland was entirely insolvent, and had no other property than that embraced by the chattel mortgage, from which the plaintiff could realize its judgment and mortgage debts. It therefore prayed for the appointment of a receiver to take charge of the personal property covered by the chattel mortgage or deed of trust, or to receive from the defendant Gleason the price that he had agreed to pay for the same; and also for an injunction to restrain the removal of the goods and chattels embraced by the mortgage, and to restrain the payment by Gleason to Boland of the purchase-money agreed to be paid therefor.

On this bill an order was passed on the 25th of January, 1898, appointing a receiver with authority to take in charge the goods and chattels and effects embraced by the mortgage bill of sale, or, in the alternative, to receive the price

thereof from Gleason; and a restraining order was also made to prevent the removal or disposition of the property or the payment of the purchase-money therefor to Boland. And under this order there came into the hands of the receiver the sum of $875, as purchase-money from Gleason.

Subsequently, the several petitions of the appellants, Thomas Babbington, John M. Kerrigan, Patrick Martin, Bartholomew McAndrews, and William E. Glover, were filed, praying to be admitted as parties complainants in the cause, and each of which petitions was founded upon a judgment of a justice of the peace in favor of the petitioner against Boland, rendered *subsequent* to the time of filing the original bill, and the order thereon, appointing the receiver, and upon which judgments no executions had been issued to create liens. There was no question or impeachment of the validity of the judgment or of the mortgage bill of sale in favor of the original plaintiff in the petition filed; but the petitioners severally alleged Boland to be insolvent, and without property that could be reached by execution on their judgments. By their several petitions, they prayed to be admitted as parties complainants, and that their judgments might be paid out of the funds *in the hands of the receiver.* All the petitioners were allowed to become parties complainant as prayed.

After these several petitions were filed, and the petitioners had become *parties complainant,* the answer of Boland, the debtor and one of the original defendants, was filed to the original bill. He does not in any manner question or deny, but fully admits, the legality and justness of the claims of the original plaintiff. He denies, however, the right of the plaintiff to have a receiver placed in charge of the property, and insists that the plaintiff had ample remedy at law.

Immediately upon the filing of this answer of the defendant Boland, the case then made was heard by the court upon bill and answer; and the court upon such hearing, passed an order, on the 15th of March, 1898, wherein it

was recited that the receiver had collected from the defend-
ant Gleason the sum of $875, and it appearing that the
plaintiff's claim with interest and costs, against the defend-
ant Boland, amounted to the sum of $754.73; therefore, *by
the consent of counsel,* it was adjudged, ordered and decreed
that the receiver pay to the solicitors of the defendant $50,
as counsel fees, and the remainder of the fund in his hands,
less a commission of $87.50 to the receiver, amounting to
$737.50, to be paid over to the solicitors for the complainant.

The day after this order was passed, the petitioners, the
present appellants, moved the court to rescind the order of
distribution just passed, because, as alleged, the order was
passed without notice to them, and in prejudice of their
rights.    There was no evidence offered in support of this
motion.

And the court, seeing no ground in fact for the motion to
rescind, on the 18th of March, 1898, overruled the motion
and discharged the receiver.    And it is from this latter order
of the 18th of March, 1898, that the appellants have speci-
fically appealed, and not from the previous final order of
distribution of the 15th of March, 1898.

There is nothing shown in the record that justifies this
appeal.    With respect to the judgment of the original com-
plainant against Boland, upon which execution was issued
and returned *nulla bona,* a lien was fixed upon the equit-
able interest or estate of the judgment debtor, in the goods,
chattels and personal effects embraced in the chattel mort-
gage made to secure a debt due to plaintiff.    This lien at-
tached from the filing of the bill; and while the property
is subject to all pre-existing liens and incumbrances, the
lien created by the filing of the bill is superior to and takes
precedence of all liens, incumbrances, and assignments, *sub-
sequently* created or made.

In this case the prior chattel mortgage to secure the loan
of $400 was a charge upon the property described in the
bill, and the debt thus secured was entitled to priority of

payment to the judgment subsequently recovered against the debtor; but, in order to secure a lien upon the residuary equitable interest of the debtor in the property mortgaged, for the security and payment of the judgment as well as the mortgage debt, it became necessary to file the bill, and the lien for the amount of the judgment attached from the time of the bill filed as against all subsequent liens, incumbrances or assignments. This principle is well established in courts of equity, and is clearly stated by Chancellor Walworth, in the case of *Edmeston* v. *Lyde*, 1 Paige Ch. 637–640, and quoted with approval by the Supreme Court of the United States in *Freedman's Sav. & Trust Co.* v. *Earle*, 110 U. S. 716, where it is said : "The creditor whose legal diligence has pursued the property into this court, is entitled to a preference as the reward of his vigilance; and it would seem unjust that the creditor who has sustained all the risk and expense of bringing his suit to a successful termination, should in the end be obliged to divide the avails thereof with those who have slept upon their rights, or who have intentionally kept back that they might profit by his exertions when there could no longer be any risk in becoming parties to the suit." But nowhere is the principle more fully and clearly stated and enforced, than by Chancellor Kent, in the case of *McDermott* v. *Strong*, 4 John. Ch. 687, also referred to and quoted from by the Supreme Court in the case of the *Freedman's Sav. & Trust Co.* v. *Earle*, just mentioned. In that case it was held by Chancellor Kent, that a judgment creditor who takes out execution at law, but is unable to reach a residuary trust interest in the chattels of his debtor, and files his bill for the aid of a court of equity, gains by his execution and legal diligence, a legal preference to the assistance of the court, or a lien on the equitable interest, which can not be affected or impaired by any subsequent assignment of that equity by the debtor, either for the benefit of all his creditors generally, or for the benefit of a particular creditor. But, without referring to

other cases, it will suffice to quote the concluding sentence of the opinion of the Supreme Court, in *Freedman's Sav. & Trust Co.* v. *Earle, supra,* where it is said: "The lien is given by the court in the exercise of its jurisdiction to entertain the bill and to grant the relief prayed; and to distribute the proceeds of the sale for the benefit of others, equally with the execution creditor first filing the bill, would be to contradict the very principle of the jurisdiction itself, and defeat the very remedy it promised; for the fruits of litigation, according to the rules of equity, would have to be divided, not only with other judgment and execution creditors, but, as well, with all creditors, whether their claims had been reduced to judgment or not."

Upon these clear and well settled principles of equity jurisprudence, it is manifest, the appellants, by their judgments subsequently recovered against the debtor, could in no manner be entitled to participate in the distribution of the fund realized under the authority of the court and brought in for distribution by the receiver, as against the claims of the appellee, the original complainant, who filed the bill to subject the property to the payment of its debts.

But, all other considerations aside, the appeal has not been properly brought into this court. The appeal, as we have seen, was specifically taken from the order of the court of the 18th of March, 1898, overruling the motion to rescind or vacate the final order of distribution of the 15th of March, 1898. This order of the 15th of March was the effective and final decree, and the order overruling the motion to rescind it is strictly analogous to the refusal to grant a new trial in an action at law, or to the refusal to grant a rehearing in a case in equity; in neither of which cases will an appeal lie. It was certainly competent to the court to rescind the order at any time during the term in which it was made, but it does not appear that there was anything before the court to call into exercise its discretionary power to revoke or to rescind the order. The appeal could have

been taken, and should have been taken, if desired, from the order of the 15th of March. The cases referred to by the counsel for the appellants show that the appeal must be taken from the final order or decree, and not from an order overruling a motion to vacate the decree. *Brockett* v. *Brockett*, 2 How. 238, 240; *Memphis* v. *Brown*, 94 U. S. 715. If the appeal had been taken and brought up from the order of distribution of the 15th of March, 1898, instead of the order of the 18th of March, overruling the motion to rescind, we should, for the reasons we have stated, have affirmed that order of distribution. But the appeal, coming as it does, we have to dismiss it.        *Appeal dismissed.*