REQUESTED BY: Senator Don Wesely Member of the Legislature District No. 26 Room 808, State Capitol Lincoln, Nebraska 68509
Dear Senator Wesely:
We are responding to your request in which you ask us to review the constitutionality of LB 700, requiring the Natural Resources Districts to create subdistricts from which members of the district board are to be elected. Specifically, you express concern about section 3 of that proposal, which authorizes population variances between subdistricts not to exceed a ratio of two-to-one. Population variances of such subdistricts allows electors from less populated subdistricts to have more powerful votes than their neighbors in subdistricts with larger populations. The issue seems to be whether this departure from the one-man, one-vote concept is constitutionally permissible in light of the unique nature of natural resources districts.
The one-man, one-vote concept was explained in Hadleyv. Junior College District of Metropolitan Kansas City,Missouri, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970), wherein the court stated:
 As a general rule, whenever a state or local government decides to select persons by popular election to perform governmental functions, the equal protection clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election, and when members of an elected body are chosen from separate districts, each district must be established on a basis that will insure, as far as is practicable, that equal numbers of voters can vote for proportionately equal numbers of officials.
(Emphasis added.) Id. at 397 U.S. 57.
The United States Supreme Court in Ball v. James, ___ U.S. ___, 68 L.Ed.2d 150 (1981), and Salyer Land Company v.Tulare Lake Basin Water Storage District, 110 U.S. 719,94 S.Ct. 1224, 35 L.Ed.2d 659 (1963), affirmed statutes that limited the class of electors of districts similar to our natural resources districts to land owners with holdings of a certain size or larger. In each case, registered voters outside the designated class of electors brought suit alleging that such limitation of the electors constituted a violation of the one-man, one-vote principle. In each case, the court held that the `disproportionate relationship that the district's function bears to the specific class of people whom the system makes eligible to vote,' justified the departure.Ball v. James, at ___, 68 L.Ed.2d at 163.
Unfortunately, neither Ball nor Salyer involved a challenge to an apportionment scheme; each dealt with a challenge to a class of electors. However, Hadley did deal with the subdistricting scheme much like that proposed in LB 700. The Hadley court, while acknowledging the broad governmental powers of a junior college district, expressly declined to distinguish elections on the basis of their purposes. Rather, the court held that the class of eligible electors would determine whether equal apportionment between subdistricts was required.
The rule that emerges from Ball, Salyer, andHadley, allows State Legislatures to regulate the class of electors, where `the effect of the entity's operation on them is disproportionately greater than the effect on those' otherwise qualified voters excluded from the class. Ball v.James at ___, 68 L.Ed.2d at 163. The unique nature of the governmental body is merely a constitutional justification for limiting the class of electors, not allowing disproportionate voting allocation. Thus, where the class of electors is not limited, the principle of one-man, one-vote is applicable.
Since LB 700 designates all resident electors as eligible voters without attempting to limit the class of electors, the principle of one-man, one-vote governs and variances are not authorized. Therefore, it is our conclusion, that the authorized variances from the one-man, one-vote principle contained in LB 700 are unconstitutional.
Very truly yours,
PAUL L. DOUGLAS Attorney General
G. Roderic Anderson Assistant Attorney General