## MANN v. POOLE.

1. APPEALS.—Errors of fact committed by the Circuit Judge through inad-
vertence and from an imperfect copy of a paper, corrected.

2. ASSIGNMENT FOR CREDITORS—SEVERAL PAPERS—PREFERENCES.—A debtor
consented to a judgment on 19th January, gave to his wife a mortgage on
9th February, which was recorded on 9th March, and to his grand-children,
for whom he was guardian, real estate and chattel mortgages on 9th Febru-
ary, which were recorded 9th and 16th May, respectively, all of these
mortgages being based upon valid past due indebtedness. Meantime he
paid off claims within a trial justice's jurisdiction and refused payment of
others, and denied that he had made a chattel mortgage. On May 18 he
executed a deed of general assignment, under the administration of which
his unsecured creditors would receive less than one-fourth of their claims.
*Held*, overruling the Circuit Judge, that this debtor knew of his insolvency,
and intended these several transactions to operate together as an assign-
ment for creditors, with preferences to his wife and grand-children (whose
money he would control as guardian), and that, therefore, the mortgages
and deed of assignment were illegal and void.

3. APPEAL.—The Circuit Judge having held the deed of assignment void by reason of its omission from its schedule of a large body of land and a small amount of personalty, and it being admitted on appeal that the land had not been omitted, this court declined to consider the effect of the omission of the personalty, as its effect as the only omission had not been considered on Circuit.

4. DEED OF ASSIGNMENT—HOMESTEAD RESERVATION.—Where an insolvent debtor, in the granting portion of his deed of assignment, inserts a clause "excepting and reserving from the operation of this deed such property as is by law exempt from attachment, levy, and sale, to wit, a homestead exemption in personal property to the amount of $500, and a homestead in real estate to the value of $1,000," the homestead and exemption were reserved out of the property conveyed.

5. IBID.—ASSIGNEE—COMMISSIONS.—Where a deed of assignment is set aside as void, the assignee is not entitled to commissions, except so far as he expended the same by consent of all parties to the cause.

6. IBID.—ACTION TO VACATE—JUDGMENT.—In action by a simple contract creditor to establish his demand and vacate a deed of assignment made by his debtor, a personal judgment may be rendered in favor of plaintiff against defendant.

7. IBID.—IBID.—RECEIVER.—A deed of assignment having been vacated, a receiver of the debtor's estate was properly appointed.

8. APPEAL—GROUNDS INVOLVED—A PETITION FOR REHEARING asked for on the ground, that the right of the debtor's wards to prove their claims, or to follow their money into property of the debtor, may be affected by this decision, refused, as no such points were, or could have been, raised and decided on this appeal.

Before NORTON, J., Laurens, February, 1893.

This was an action, commenced June 21, 1892, by Jacob Mann, Henry Mann, and Levi Mann, as J. & H. Mann & Co., against J. T. Poole, individually and as guardian, N. B. Dial, assignee, and the wife and wards of J. T. Poole. The granting clause of the deed of assignment referred to in the opinion was as follows: "Now, therefore, I, the said J. T. Poole, in consideration of the premises, and of one dollar to me paid by N. B. Dial, of the County of Laurens, in said State, the receipt whereof is hereby acknowledged, have granted, bargained, sold, assigned, transferred, and set over, and by these presents do grant, bargain, sell, assign, transfer, and set over, unto the said N. B. Dial all my lands, tenements, hereditaments, goods, chattels, property, and rights in action of every name, nature, and description, wheresoever the same may be, a schedule of which

is hereto attached as a part of this deed, and designated as exhibit A, excepting and reserving from the operation of this deed such property as is by law exempt from attachment, levy, and sale, to wit, a homestead exemption in personal property to the amount of five hundred dollars, and a homestead in real estate to the value of one thousand dollars, I being the head of a family and a resident in this State; to have and to hold all of said property, except as above stated, unto the said N. B. Dial, his heirs and assigns, in trust, to sell and dispose of the said real and personal property and to execute titles in his name, and to collect the said choses in action, with the power to compound for the said rights in action, taking a part for the whole where the said N. B. Dial shall deem it expedient so to do, and then, in trust, to apply the proceeds of the said property and rights in action in the following order and manner."

All parties appealed.

*Messrs. Ball, Simkins & Ball, Simpson & Barksdale, Ferguson & Featherstone,* and *Johnson & Richey,* for plaintiffs.

*Messrs. F. P. McGowan* and *W. H. Martin,* for defendants.

November 10, 1893. The opinion of the court was delivered by

MR. JUSTICE POPE. The plaintiffs commenced their action against the defendants on the 21st June, 1892, in the Court of Common Pleas for Laurens County, in this State. The complaint substantially alleged that the defendant, J. T. Poole, who was a merchant in the town of Laurens, was indebted to the plaintiffs, a mercantile firm, for goods and merchandise sold and delivered to the defendant, J. T. Poole, during the months of March and September, 1891, amounting in value to $531.50, and as an evidence of this said indebtedness the defendant had made and delivered to them his two promissory notes, due in sixty and ninety days, respectively, from the 28th January, 1892, the date of said notes, less the sum of $50, which he had, previous to the last date, paid on such indebtedness; that the said J. T. Poole, who is the grandfather of the defendants, J. Ralph Martin, Annie Louise Martin, and Leonora Martin, and with whom said defendants reside, is the general guardian of said defendants, all of whom are infants

under the age of fourteen years; that the said J. T. Poole, on the 2d day of February, 1892, executed a mortgage on four tracts of land, aggregating more than 1,300 acres, and situate in the County of Spartanburg, unto his wife, the defendant, Anna W. Poole, to secure two promissory notes, aggregating $3,559, dated, respectively, 16th September, 1891, and 10th October, 1891, and due sixty days and one day after date, respectively; that on the 9th of February, 1892, the defendant executed unto the infant defendants, J. Ralph Martin, Annie Louise Martin, and Leonora Martin, two mortgages, one covering all his stock of goods in the town of Laurens, and the other covering all the lands situate in Spartanburg County which had been previously mortgaged to his wife, the said Anna W. Poole, and that the alleged consideration of said mortgages to his three grand-children was the securing the three bonds, each for $5,000, he had executed to the judge of probate of Laurens, as the guardian of the three said grand-children, in January and February, 1891; that on the 18th May, 1892, the said J. T. Poole executed a deed, whereby he conveyed unto N. B. Dial, the defendant, as assignee, to pay his debts, all his property, real and personal, enumerated in said deed of assignment; that said N. B. Dial accepted such trust, and thereafter, on the 19th May, 1892, such deed of assignment was duly recorded in Laurens County, and on the 29th May, 1892, was recorded in Spartanburg County; that said Dial has possessed himself of the assigned estate and is disposing of the same under said deed.

The complaint charges that the said J. T. Poole has withheld certain property from the operation of the terms of said deed of assignment in fraud of the rights of his creditors; that the mortgages to his wife and grand-children were a fraud upon his creditors, in that thereby the said J. T. Poole, who was then insolvent, and being largely indebted to many persons and firms, intended to secure an advantage to himself and different members of his family. Wherefore, the plaintiffs pray judgment: 1. For a judgment against J. T. Poole for their debt. 2. For setting aside, as null and void, the mortgages to the wife and grand-children of the said John T.

Poole, and also the deed of assignment to N. B. Dial as assignee. 3. For an injunction against N. B. Dial, restraining him from collecting and selling any of the assets of the assigned estate, and from distributing the same, and also enjoining J. T. Poole from disposing or interfering with his property. 4. For the appointment of a receiver.

The answers denied any impropriety or fraud in any of the transactions as set out in the complaint, denied the right of plaintiffs to any of the relief sought, and prayed that the complaint be dismissed.

Testimony was taken before a special referee and reported to the court. The cause came on to be heard before the Hon. J. J. Norton, as presiding judge, in the Court of Common Pleas for Laurens County, at February term, 1893, on the pleadings and testimony already taken. By his decree, rendered on the 2d May, 1893, he held: 1. That the mortgages by J. T. Poole to Anna W. Poole, and to Leonora Martin, Anna Louise Martin, and J. Ralph Martin, both joint and several, are not parts of the general assignment of J. T. Poole for the benefit of his creditors, but are valid, subsisting liens upon the property embraced in them, respectively; the last three are entitled to payment out of the funds in the hands of N. B. Dial, the proceeds of the stock of goods which were mortgaged therein. 2. That the paper purporting to be a general assignment by J. T. Poole for the benefit of his creditors, dated 18th May, 1892, be set aside. 3. That Harvey W. Anderson be appointed receiver of all the real and personal property embraced in the deed of assignment. 4. That Harvey W. Anderson, before entering upon the discharge of the duties of his office as receiver, do enter into a bond in the penal sum of $20,000, conditioned to secure the performance of his duties as receiver before the clerk of court for Laurens, with sureties to to be approved as sufficient by said clerk. 5. That N. B. Dial shall turn over to such receiver all the property of the assigned estate, the proceeds derived from sale to be in lieu of the property sold, reserving the question, whether N. B. Dial is entitled to any compensation, and if any, how much, to the further order of court. 6. That the plaintiffs pay the costs

to date of defendants, Anna W. Poole and the three minor grand-children. 7. That plaintiffs have judgment against J. T. Poole for the sum of $481.50, with interest from 1st March, 1892, and also some additional interest and costs up to date. 8. That the clerk advertise for six consecutive weeks for creditors of J. T. Poole to present and establish before him their respective demands, on pain, upon failure to do so, of being barred of all benefit under this decree. 9. That J. T. Poole's real estate, situate in Spartanburg County, not having been embraced in his purported assignment, the mortgagees thereof may enforce their mortgages thereon as they may feel advised, both as to that portion dealt with by N. B. Dial, in his supposed character as assignee, and also those portions of such real estate with which said Dial has not interfered. Anna W. Poole will, however, remain a party to this action, for the purpose of adjusting her equities in regard to any surplus or deficiency.

Both plaintiffs and defendants have appealed from this decree. The grounds of such appeal by the plaintiffs are:

I. Because the Circuit Judge erred in finding: 1. That the note executed by J. T. Poole to his wife, Anna W. Poole, on the 10th day of October, 1891, was due ninety days after date, the same being really due one day after date. 2. That the Spartanburg lands, thirteen hundred and fifty-six acres, were omitted by J. T. Poole from his assignment. 3. That J. T. Poole, at the time of giving the mortgage to his wife and the mortgage to his wards, had no intention of making a general assignment afterwards. 4. "That the mortgages in favor of Anna W. Poole and of the minors are valid and not obnoxious to chapter 72 of the General Statutes of this State, prohibiting an insolvent debtor from giving a preference to any creditor in an assignment for the benefit of creditors, but are within the provision (allowing) an insolvent debtor to make such preference at any time more than ninety days prior to the making of such assignment." 5. That the mortgage from J. T. Poole to his wife and the mortgages from him to his wards are not parts of his general assignment for the benefit of his creditors, but are valid and subsisting liens upon the property embraced

in them. 6. That the mortgages to the wards are entitled to payment out of the proceeds of the stock of goods in the hands of N. B. Dial, Esq. 7. That Mrs. Anna W. Poole may proceed to foreclose her mortgage over the Spartanburg lands, independent of this action and of the receiver appointed herein.

II. Because the Circuit Judge erred in not holding: 1. That J. T. Poole, when he made the mortgages to his wife and to his wards, intended following them, after ninety days, with his assignment for the benefit of his creditors. 2. That the mortgages of J. T. Poole to his wife and to his wards were intended to be, and are, in effect parts and parcels of his general assignment, and with said assignment are void, as operating to give his said wife and wards preferences. 3. That the mortgages to Poole's wards were, in fact, mortgages to himself, whereby he undertakes to secure for himself the use of the money and commissions thereon for many years. 4. That the Spartanburg lands should be taken in charge by the receiver, and by him disposed of under the orders of this court.

III. Because the Circuit Judge erred in adjudging plaintiffs to pay the costs of the defendant mortgagees.

The defendants set up these grounds of appeal: 1. Because his' honor erred in finding that J. T. Poole omitted from his schedule and assignment his lands in Spartanburg County, containing 1,356 acres. 2. Because his honor erred in holding, that, under the terms of the deed of assignment, no property was conveyed except that embraced in the schedule. 3. Because his honor erred in holding, that the construction of the deed of assignment was not affected by subsequently setting apart as a homestead the personal property omitted from the schedule, when such construction was based upon testimony *aliunde.* 4. Because his honor erred in holding, that the omission of property from the schedule, combined with the requirement of releases from creditors, made the assignment fraudulent and voidable by creditors. 5. Because his honor erred in holding, that J. T. Poole intentionally omitted any personal property from his schedule, and that there was no testimony explaining such omission. 6. Because his honor erred in holding, that the terms of the deed of assignment necessarily implied that

the homestead and exemption were reserved out of the property conveyed. 7. Because his honor erred in holding, that the defendant, J. T. Poole, was consciously insolvent at the time of, or subsequently to, the execution of the mortgage to Anna W. Poole. 8. Because his honor erred in directing N. B. Dial, the assignee, to turn over the gross proceeds of sale and the assigned property to H. W. Anderson as receiver. 9. Because his honor erred in rendering a personal judgment against J. T. Poole in favor of the plaintiffs: 1st, because such judgment was not within the scope of this action; 2d, because the decree did not ascertain the amount alleged to be due the plaintiffs. 10. Because his honor erred in setting aside the deed of assignment and appointing a receiver.

We will consider the grounds of appeal of the plaintiffs in their order.

1. There is no difficulty in sustaining this ground of appeal. The Circuit Judge for the moment disregarded the pleadings and the proof. The note of J. T. Poole to his wife, Anna W. Poole, for $1,209, and dated 10th of October, 1891, was really due one day after that date, and not ninety days after date, as found by the Circuit Judge. 2. Nor is there any difficulty in sustaining the second ground of appeal. However, justice to the Circuit Judge requires us to say that it was admitted in the argument before us, that this error arose from a defective copy of the assignment deed furnished by counsel to the court. This was not intentional on the part of counsel here engaged, but, as we shall see later on, serious results have followed from this unintentional oversight. The 1,356 acres of land situated in Spartanburg County were included in the deed of assignment executed by J. T. Poole on the 18th day of May, 1892.

We will next consider the remaining grounds of appeal, being those numbered respectively 3, 4, 5, 6, 7, under the first branch of these grounds of appeal, presented by plaintiffs. To do justice to all parties concerned, it may be well to group the facts that bear upon this branch of the controversy. J. T. Poole was not only a practicing physician at Laurens, but he conducted a large mercantile establishment

there. Not only so, but he was the owner of a handsome dwelling house there. Besides all these, he owned 1,356 acres of land in Spartanburg County and some farming lands in Laurens County. It seems that he had been a partner, prior to 1890, with his son-in-law, Mr. Judge Martin, who died before 1890, and that this mercantile firm had lost money in their business. To protect two sureties on an indebtedness to the National Bank of Laurens, he had mortgaged his dwelling house in Laurens up to its full value. He also had placed a mortgage upon his real estate in Spartanburg County to Shattuck & Huffman, to secure a debt that, 22d November, 1892, amounted to $2,700. In the first months of the year 1891, he had become the general guardian for his three grand-children, J. Ralph, Annie Louise, and Leonora Martin, and on the 1st January, 1892, he owed them $7,500. He also owed his wife, Anna W. Poole, $3,559, that he borrowed in September and October, 1891. Not only did he owe these sums, but he was indebted to others for more than $15,000. On the 19th January, 1892, he accepted service of summons and complaint, and consented that judgment be taken against him for about $1,000 for two commercial creditors. His affairs, so far as payment to his creditors were concerned, were in such shape that he allowed notes and drafts, through the two banks at Laurens, during the months of December, 1891, and January, 1892, to be presented and returned for non-payment. He answered attorneys, who presented demands for payment, that he was unable to pay them.

On the 2d of February, 1892, he gave his wife, Mrs. Anna W. Poole, a mortgage of his lands in Spartanburg to secure the debt of $3,559 that he owed her. This mortgage was recorded in Spartanburg in March, 1892. On the 9th of February, 1892, he executed a mortgage to his three grandchildren, who were his wards, on his lands in Spartanburg County, to secure them from loss at his hands as guardian. This mortgage was recorded in May, 1892. On the same day, 9th of February, 1892, he executed to each of his three wards a mortgage upon his stock of goods in Laurens, to secure them against loss by reason of his guardianship of their estates. In April, 1892, he denied, in effect, that he had executed these

mortgages to his wife and three grand-children. On the 9th May, 1892, these mortgages on his stock of goods were marked as filed for record, although Mr. L. W. Simkins, an attorney for creditors, could find no trace of them in the clerk's office on the 16th May, 1892, when he searched that office for liens upon Poole's property. On the 18th May, 1892, he executed a deed of assignment. This last deed was duly recorded on the 19th May, 1892, and under it Mr. N. B. Dial was the assignee. The object of the plaintiffs is to set this assignment aside, first, because the assignor Poole did not include all his property in the assignment, and, second, because, prior to the assignment, and in contemplation thereof, mortgages for large sums were executed by the assignor to members of his own family for the purpose of preferring the mortgagees, and that such mortgages and assignment were parts and parcels of one transaction, and constitute an assignment giving preferences, in violation of the assignment act.

We will pass over, for the present, the question of the omission from the assignment of certain property of the assignor. Really, the grounds of appeal we are now considering embody the second ground of attack upon the validity of this deed of assignment. It is no longer profitable, in the light of the repeated adjudications of this court on the subject, to consider the right of an insolvent debtor to give a mortgage to one or more of his creditors when it is intended that such a mortgage or mortgages shall operate as mere securities to secure such creditor or creditors *bona fide.* In the light of our decisions, whenever it becomes necessary to canvass the transactions of insolvent debtors with their creditors, who are preferred by receiving a lien upon such insolvent debtor's property to the exclusion of all other creditors, so as to determine whether such preferences are obnoxious to the provisions of chapter 72 of our General Statutes, the crucial test is this: Was it the intention of the insolvent debtor to honestly secure the debt of one or more of his creditors by giving a judgment, or a mortgage, or an assignment of certain choses in action, or was it his purpose thereby to give one or more of his creditors a preference over other creditors?

Thus *the intention* of the insolvent debtor must be ascertained, and this presents a question of fact. The Circuit Judge, in this action, has found as a fact that John T. Poole, at the time he executed these mortgages to his wife and three grand-children, was *consciously insolvent*, but his honor would not go any further in this direction. The appellants ask this court to examine the facts as proved and see if their charges as to these mortgages are not true. The settled rule of this court is, that the findings of fact by a Circuit Judge will be accepted here unless they are without any testimony to sustain them, or are manifestly against the weight of the testimony. We cannot say that there is an absence of testimony here, because he has found that the indebtedness of J. T. Poole to his wife and three grand-children, respectively, was a *bona fide* indebtedness, and it is admitted that the mortgages were executed at their respective dates, and there is not a scintilla of testimony respecting the conduct of Mrs. Poole or the grand-children to impeach their good faith.

It remains to see if the conclusions of the Circuit Judge are manifestly against the weight of the testimony. Granted that if there are ties in human life that appeal to the heart of man, it is the marital tie that bids a man protect the wife of his bosom, or the sacred duty he owes to the prattling babe, the offspring of a dead child. Delicate and tender as are all these, yet the laws require that when the property of the wife or the grand-children pass under the control and custody of the husband and grand-father, that the time to be most careful is the moment when such property comes into his hands. If J. T. Poole had executed a mortgage to his wife at the time he borrowed her money, or had executed a mortgage to the sureties on his guardianship bonds when he became guardian, that would have been one thing; to wait months in one case and a year in the others presents a more serious question. The deed of assignment, in the inventory of property attached thereto, values his estate at $43,415.58, and his indebtedness at $32,473.68. If this was a correct estimate, Poole was solvent. But what does the testimony disclose? N. B. Dial, in his testimony, states that debts against the assigned estate for

between $33,000 and $34,000 have been presented to him. The costs and fees connected with the assignment will not be less than $2,500; thus his liabilities range at about $36,000. Mr. Dial in his testimony thus places his estimate upon Poole's property :

| | | |
|---|---:|---:|
| Stock of goods sold for...................................... | $8,757 | 81 |
| His choses in action, $9,815.15, worth one-third..... | 3,271 | 71 |
| The Whitmire place and the Davis place.............. | 1,800 | 00 |
| Four other tracts in Spartanburg (home place, sixty acres; Garrett place, sixty acres; one-half Montgomery place)............................. ....... | 2,407 | 00 |
| The balance of Montgomery tract and the Ferguson tract ...:...................... .... ................. | 1,000 | 00 |
| Mrs. E. Poole tract, sixty acres......................... | 400 | 00 |
| Sexton place, 317 acres................. .................. | 1,500 | 00 |
| The Bolton place......... .................................... | 500 | 00 |
| Phelson place (testimony of L. A. Langston), in Laurens. ........ ........................... ............... | 200 | 00 |
| The Judge Martin place, in Laurens.................... . | 2,550 | 00 |
| Home place........... ...................................... | 5,000 | 00 |
| | $27,386 | 52 |
| Deduct from this sum his homestead.................. | $1,000 | 00 |
| Total available assets................................. | $26,386 | 52 |

Compare this sum with his debts, $36,000, and his estate will not pay his debts in full by $10,000.

| | | |
|---|---:|---:|
| Now, the home place is mortgaged virtually to National Bank of Laurens........................... | $5,000 | 00 |
| The judgments obtained in February................. | 1,000 | 00 |
| The mortgage of Shattock & Huffman is.............. | 2,700 | 00 |
| The mortgage of Mrs. Anna H. Poole, and interest, is............................................ ....... | 3,800 | 00 |
| The mortgage to the grand-children is $7,500, and interest.................................................... | 8,500 | 00 |
| The costs and expenditures of assigned estate are.. | 2,500 | 00 |
| Amount of preferred debts is...... ................. | $23,500 | 00 |

Deduct this from available assets, $26,386.52, leaves $2,866.52 left of this estate for all other creditors. When the interest and costs' account are accurately stated, there will not be the sum of $2,866.52 for general or unpreferred creditors. Of $23,500 of preferences, over $12,000 is to his own family—to his wife and grand-children. Courts of justice cannot be expected to sanction such bald-faced wrong. Whether such sanction is expected or not, the proof should not be wanting that they will not. To expect any man to believe that Dr. Poole did not systematically contrive this result is asking too much of human credulity. Every step makes a design. See the judgment *unresisted* for $1,000. See how quick he is to pay off claims under $100, when suit is brought in the court of trial justice. See the vigilant care to have the mortgages to his grand-children marked filed 9th May, 1892, in the clerk's office, when the assignment is made on the 18th May, 1892. These mortgages are from himself to himself, virtually, for, as general guardian, he could collect and control every dollar of this more than $8,500. And there is a clause in these mortgages to his grand-children, who are his wards, wherein there is a covenant in which he seems to look forward to such a step as an assignment. To our minds, the weight of the testimony is manifestly against the conclusions of the Circuit Judge, and these grounds of appeal are sustained; but as to the seventh, it is necessary to explain that the Circuit Judge was innocently led into this mistake, as has already been explained under subdivision 2 of first general division.

The conclusions just announced render it unnecessary to do more than announce that we sustain all the remaining grounds of appeal presented by the plaintiffs.

Let us next consider the grounds of appeal presented by the defendants. 1. We sustain the first exception of these appellants. As we have before remarked, this was an innocent error on the part of the Circuit Judge.

2. As to the second exception, we do not feel that it is necessary for us to pass upon this nice question, for we have already decided that the assignment was void for another or other reasons, but it is well to remark that, under the circumstances of

this case, we would not feel at liberty to canvass the decision
of the Circuit Judge where it relates to the invalidity of the
deed of assignment, on the ground that the assignor failed to
include therein all his property; for it must be remembered
that the Circuit Judge found as facts, that assignor had omitted
1,356 acres of land situate in Spartanburg, and $218.25 of per-
sonal property, from the inventory attached to the deed of
assignment and as a part thereof.   Now, this court could not
undertake to say whether the Circuit Judge would have vacated
and annulled the deed of assignment if only $218.25 of personal
property was omitted from such deed or not, for he certainly
had in his mind the omission of the Spartanburg lands, being
1,356 acres.   Hence, while we have been pleased with the ability
of the counsel for the respective parties to this appeal in argu-
ing this proposition, we must decline to consider it, in justice
to the Circuit Judge.   Indeed, but for our conclusion on the
other branch of the case, we fear our duty would have required
us to send the cause back for a rehearing in the Circuit Court.
The third exception, for the reasons just given, cannot be sus-
tained.   And so, also, for similar reasons, we cannot sustain
the fourth exception.   The fifth exception, under our views of
the conduct of J. T. Poole, could not be sustained.

We think the decision of the Circuit Judge was correct in
holding, that the terms of the deed necessarily implies that
the homestead and exemption were reserved out of the
property conveyed.   The very terms of the instrument
seem to demand this construction.   Hence, the sixth
exception is overruled.   We do not think it necessary to repeat
the testimony relied upon by us to support the conscious-
ness of J. T. Poole, that he was insolvent at the time of,
or subsequently to, the execution of the mortgage to
Anna W. Poole.   How any other conclusion could have been
reached by Dr. Poole, in his mind, we cannot conjecture.

As to the eighth ground of appeal, we are somewhat per-
plexed.   The deed of assignment has been declared by us to be
invalid, and it would seem that N. B. Dial, having gained
his connection with the assigned estate under that in-
valid deed, would not be able to do otherwise than sur-

render all connection with said property under the terms of Judge Norton's decree; yet we are confronted in the case with an order, consented to by all the parties to this controversy, that Mr. Dial should use at least $2,700 of the assigned estate in his hands to pay a preferred creditor of the assigned estate. It does seem that, to this extent at least, he is entitled to his fees as fixed by law, without any regard to what other compensation shall attach under the orders of court in this case, to the services rendered the assigned estate by Mr. Dial. The decree should be so modified that in paying over the assigned estate, Mr. Dial should be allowed the usual commissions on this $2,700, received and paid out to Shattock & Hoffman. And to this extent alone we sustain the eighth exception, the remainder thereof being overruled.

As to the ninth ground of appeal, we apprehend it will not be seriously considered necessary for us to say much. The claim of plaintiffs had to be established, in order to entitle the plaintiffs to successfully maintain their action, under section 2016 of the General Statutes of this State. The only mode of establishing it here was to give judgment thereon.

The tenth ground of appeal is very general; too much so, we fear, to be seriously urged for our consideration. It possibly might have been necessary, if we had taken a different view of this case. We have already sustained the judgment of the Circuit Court in annulling the deed of assignment, but upon a different basis than that pointed out by his honor, the Circuit Judge. The appointment of a receiver was the logical consequence of annulling the deed of assignment. This exception must be overruled.

It is the judgment of this court, that the judgment of the Circuit Court be modified in accordance with the principles herein announced; and the action is remanded to the Circuit Court for such further proceedings as may be necessary.

A petition for rehearing was filed in this case, upon which the following order was endorsed, December 6, 1893,

PER CURIAM. The rehearing is asked for upon two

grounds: 1st. Because, as it is alleged, the judgment of this court, heretofore rendered, as it now reads, will, or at least may, estop the minors from establishing their claim for the money for which Poole undertook to give them a mortgage, under the call for creditors of said Poole to come in and establish their demands within a time limited by the Circuit decree. 2d. Because, by the terms of the former opinion, the minors will, or at least may, be prevented "from following the proceeds of sale as stamped with a trust for their benefit to the amount of their estate used in payment of the said goods." After a careful consideration of the whole record, we do not find that either of these points was raised, either on Circuit or in this court, and hence there is nothing in the former opinion which touches either of these points. Indeed, we are unable to see how either of these points could have been raised or considered here. In the first place, we do not see that the minors appealed, and no one of the exceptions filed by those of the parties who did appeal present either of the points now, for the first time, brought to our attention. It follows, therefore, that this court not only did not but could not have considered or decided such points. We do not think that there is any ground for a rehearing, and the petition is, therefore, dismissed, and the stay of the *remittitur* heretofore granted is revoked.