PORTER v. STRICKER.

1. ASSIGNMENT FOR CREDITORS—MORTGAGE.—Whether a mortgage is void under the assignment law is to be determined by the application of the following rules: (1) An insolvent debtor may, by a *bona fide* mortgage, which is intended merely as a security for a just debt, prefer one of his creditors. (2) If the mortgage is really designed to operate not as a security merely, but as a means of transferring the debtor's property to the favored creditor, in preference of the other creditors, then it is void under the assignment law. (3) The question as to what was the intention is a question of fact. *Cases reviewed.*

2. IBID.—IBID.—Under the application of these rules, the mortgage in this case was held not to have been intended to operate as an assignment.

Before WATTS, J., Chester, March, 1894.

Action by Benjamin B. Porter and others against Robert W. Stricker and others. The report of the referee was as follows:

This is a supplementary proceeding on the part of judgment creditors of R. W. Stricker, and was commenced on the 14th day of February, 1893, by service of summons and complaint, and has for its object setting aside a mortgage executed by R. W. Stricker to Mary J. Coleman on the 1st day of January, 1892, upon the ground that same was given with the intent to defeat his commercial creditors and prefer Mary J. Coleman, and charging and alleging that the debt to Mary J. Coleman was not *bona fide*, and, further, that the mortgage was, indeed, an assignment made and executed in violation of the laws of the State, and is void. All of the defendants made answer, denying the material allegations of the complaint. The total amount of the judgment (judgments bearing date April 1, 1892,) debts established before me amount, in round numbers, to $2,400, and in two of the cases the executions have been returned to the clerk's office marked *"nulla bona."* I have taken the testimony as ordered, which is now on file in this court, and from the testimony I find the following facts:

Robert W. Stricker had for a number of years been carrying on a mercantile and manufacturing business in the town of Chester, and for the transaction of such business occupied and

used the shops, storerooms, etc., belonging to the defendant, Mary J. Coleman (whose agent John K. Coleman was then and now is). That the rental value of said shops, storerooms, etc., was the sum of $400 per annum, and that Robt. W. Stricker paid the rents, at the above mentioned price, up to and including the year 1887. That for the years 1888, 1889, 1890, and 1891, Stricker failed to pay the rents, except in part, but executed and delivered to Mary J. Coleman his notes for the rent of 1888, 1889, 1890—the rent for 1891 being included in the mortgage in controversy, no note having been given for this year—the notes for rent to bear interest from the end of each rental year. That one of said notes has been lost or misplaced by Stricker since he took up the same by the mortgage. That on 1st January, 1892, Stricker was due and owing Mrs. M. J. Coleman the sum of $1,600 on account of rent, and also the sum of $200 which she had loaned him, making Stricker's total indebtedness to her $1,800. That at this time, to wit: January 1, 1892, Stricker was indebted to sundry creditors in the aggregate about $4,000 over and above the amount he owed Mrs. Coleman, and had, in the way of assets, between $2,000 and $3,000 in way of notes, mortgages, and accounts, in addition to the stock on hand. Stricker was at this time insolvent—he says so himself, in effect—and Coleman knew that he had been hard pressed for money, and while he may not have been absolutely certain of his insolvency, yet, from all the circumstances, and considering the intimate relationship which existed between J. K. Coleman and Stricker, Coleman knew that Stricker could not meet his obligations if his creditors pressed him, which, for the purposes of this case, amounts to the same thing as insolvency. Coleman was indulgent to Stricker, and up to this time had frequently loaned him money, as much as two, three, and four hundred dollars at a time.

On the 1st day of January, 1892, under these circumstances, Stricker executed and delivered to Mrs. M. J. Coleman (through her agent, J. K. Coleman,) the note and mortgage now in controversy, payable at one day, covering the articles as set out in the complaint in this action, and, from the testimony of Stricker himself, covered everything he had, except a few

buckles in the harness shop, and the said mortgage was placed upon record in office of register of mesne conveyances of Chester County on the 3d day of February, 1892. That the mortgage was given for *bona fide* debt, a large portion of which was long since past due, and was then all due and unpaid, and that Stricker gave her the mortgage to secure her and prefer her; and the testimony fails to show that there was any collusion between Stricker and Coleman, or that there was any fraud in the transaction. This mortgage was held by Mrs. Coleman until the 21st day of April, 1892, at which time a sale of the mortgaged goods was made thereunder, after legal advertisement; and on this day notice was served upon Mrs. M. J. Coleman and J. K. Coleman, her agent, by Messrs. Glenn & Gage, attorneys representing sundry creditors of R. W. Stricker, protesting against the sale of the goods and chattels of R. W. Stricker, stating in said notice that the mortgage was void, and that the creditors would look to them for said goods and the value thereof.

The sale, however, was made, under the direction and supervision of J. K. Coleman, and all articles enumerated in the mortgage were sold, except some silverware, which was erroneously included therein, and was the property of Stricker's son. From the sale bill in evidence, the property sold brought $1,103.55, and at the sale J. K. Coleman purchased for himself (not as agent for his wife) goods amounting to $1,093.25, and the mortgage of Mrs. Coleman has a credit endorsed thereon of date 25th April, 1892, $1,100.50. That the sale was an open and fair sale. That the vehicles and coffins failed to bring their cost value, the deficiency being $150 to $175; the notes, mortgages, and accounts only bringing the sum of forty dollars.

That Stricker, in order to reduce rent expenses, on 1st January, 1892, moved part of the goods upon which the mortgage of Coleman was placed to Odd Fellows' Hall, giving up a room of Mrs. Coleman's, in which the goods had previously been, and these goods were sold in Odd Fellows' Hall. That John K. Coleman left the goods bought by him at the sale in charge of Stricker to sell for him, and that Stricker turned over to Coleman the moneys received by him on account of such sales.

Some of the vehicles are yet unsold, and Stricker has collected for Coleman on the outstanding notes and accounts purchased by Coleman at the sale from one to two hundred dollars. That Stricker turned over to other creditors two vehicles, in March, 1892, upon which Coleman held a mortgage. This was before Coleman seized the goods, and Stricker replaced the vehicles by substituting others made by him. That Coleman never listed the notes, mortgages, and accounts purchased by him. They call for a value of about $1,000, but he has collected only about $75 upon them, and he has collected, all told, from sale of vehicles, notes, mortgages, and accounts, about $900, and has several jobs still on hand. That Stricker is now conducting business as agent for his wife, Sarah J. Stricker, having borrowed $500 from the building and loan association for that purpose.

Now, from the facts of this case as above stated, is the mortgage in controversy an assignment in fact, though a mortgage in name? The debt was *bona fide.* Part of it had been past due for three years, and with each year, under our law, Mrs. Coleman had a preferred lien upon the merchandise in her houses to secure the payment of her rents, but she was indulgent to Stricker, and manifested a desire to help him along in his business, not only by not closing down upon him for her yearly rents, which she had a perfect right to do, but in addition loaned him as much as $200 in money to assist him to prosecute his business. The counsel for plaintiff, in the argument before me at the reference, called my special attention to the cases of *Meinhard* v. *Strickland,* 29 S. C., 491, and of *Archer* v. *Long,* 32 S. C., 171. I have examined these cases carefully, and fail to find any analogy between them and the one now before the court, the facts being entirely different. In this case the mortgage was given for a *bona fide* debt past due, and no attempt to foreclose the same until about ninety days after its execution, and even then evidently in self-defence; while in the case of *Meinhard* v. *Strickland,* the mortgage was given payable on demand, and had incorporated in it debts not maturing for one and two years, and the same almost instantly foreclosed. In the case of *Archer* v. *Long,* the facts there brought out evidently showed collusion between parties in interest; that the mortgaged

property, after sale, remained in the possession of the mortgagor, and the moving cause of the execution of the deed and mortgage from Means to Beaty was that Beaty should assign the same to Means' children.    We have no such facts here.    There was no collusion between Stricker and Coleman, and Stricker neither was to receive nor has received any benefit, direct or indirect, from Coleman on account of executing the mortgage, and the only object he had in view was to secure her, and that he had a legal right to do, even if it can or could be assailed from a moral standpoint.

The counsel for defendants, in argument before me at the reference, called my special attention to the cases of *Verner* v. *McGhee*, 26 S. C., 248; *Magovern* v. *Richard*, 27 S. C., 272; and *Lamar* v. *Pool*, 26 S. C., 441; and upon these I rest this case.    All the cases to which my attention has been called by the attorneys representing both plaintiffs and defendants have been carefully read and considered by me, and through each of them, without exception, is the underlying principle that a debtor may prefer a creditor by mortgage to secure a *bona fide* debt, where it is without intent to defeat, hinder or defraud other creditors; and this intent, in my judgment, not appearing in the case before me, I conclude that the mortgage is valid, that the same should be sustained, and the complaint dismissed.

The Circuit decree was as follows:

This is an action brought by certain judgment creditors of the defendant, Robert W. Stricker, to have declared null and void a certain mortgage made by Stricker to M. J. Coleman, dated the 1st day of January, 1892, upon the ground that said mortgage was, under section 2014 of the General Statutes, an assignment by Stricker in preference to Coleman.    This cause was referred to John C. McFadden, Esq., referee, and he has filed his report on the testimony, to which exceptions were filed by the plaintiffs, and the cause was heard by me upon these exceptions.    After hearing the testimony, exceptions, the argument of counsel for plaintiffs and defendants, I hold and adjudge that said mortgage was an assignment by Robert W. Stricker made to the defendant, M. J. Coleman, with intent to prefer

her over Stricker's other creditors, and was in violation of section 2014 of the General Statutes of this State, and is null and void.   Before the sale of the mortgaged property, had on the 21st day of April, 1892, the plaintiffs gave notice to John K. Coleman, agent for Mrs. M. J. Coleman, that they protested against the sale of the property on the ground that the mortgage was void.   At the said sale, with the notice of this claim, John K. Coleman bought in very near all the property covered by the mortgage, and has sold much of it.   Again, he has also collected some of the accounts due to Stricker, but how much the referee does not exactly report.

It is further adjudged, that all rights acquired under said mortgage and the sale thereunder be vacated and annulled, and that the property seized and sold under the mortgage, or the value thereof be forthwith delivered and paid over to the receiver hereinafter named, to hold and disburse the same according to the provisions of law; that the defendants, M. J. and J. K. Coleman, account before the referee herein for all the property received by them, or either of them, and all the moneys collected by them, or either of them, under said mortgage, &c.

Defendants appealed.

*Mr. S. P. Hamilton,* for appellants.

*Messrs. J. L. Glenn* and *G. W. Gage,* contra.

April 19, 1895.   The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER.   The facts of this case are so fully stated in the report of the referee as to render any restatement of them here unnecessary, inasmuch as such report, together with the decree of the Circuit Judge, will be incorporated in the report of this case.   The object of the action was to set aside a chattel mortgage given by the defendant, Stricker, to his codefendant, M. J. Coleman.   While the mortgage was assailed in the complaint upon two grounds—1st, that it was void under the Statute of Elizabeth; 2d, it was void under the assignment law—yet, as the attack on the first ground utterly failed, the only question for consideration now is, whether the

mortgage is void under the assignment law.    See section 2146,
Rev. Stat.    In order to sustain this ground, it is neces-
sary to show that the transaction in question, though
taking the form of a mortgage, was, in fact, intended as
an assignment with preferences, and thus, while in form a vio-
lation of the letter, was really in violation of the spirit and
true intent of the act.    This has been the uniform construction
which this court has placed upon that feature of the assign-
ment law (sec. 2014 of the Gen. Stat. of 1882, now sec. 2146 of
1 Rev. Stat. of 1893), from the case of *Wilks* v. *Walker*, 22 S.
C., 108, the first case in which this subject was considered,
down to the case of *Mitchell* v. *Mitchell*, 42 S. C., 475, the last
utterance of the court upon the subject.

In the case of *Wilks* v. *Walker* the question was considered as
arising on a demurrer to the answer, in which it was alleged
that the transactions there assailed were entered into in pur-
suance of an intent to assign all of the insolvent debtor's prop-
erty to certain of his creditors, in preference to, and exclusion
of, all his other creditors, and this allegation being admitted
by the demurrer, the transactions there assailed were obnoxious
to the assignment law, for there the intent was admitted.

In *Austin, Nichols & Co.* v. *Morris*, 23 S. C., 393, the Circuit
Judge found as a fact, that the mortgages there assailed were
in fact intended as an attempt to evade the provisions of the
assignment law, and this finding of fact being accepted and
approved by this court, the legal conclusion followed, that the
mortgages were in fact, though not in form, an assignment,
and, therefore, void under the provisions of the assignment
law.    In *Lamar* v. *Pool*, 26 S. C., at page 446, the late Chief
Justice Simpson, in delivering the opinion of this court, after
laying down the universally conceded doctrine, that even an
insolvent debtor may, by a *bona fide* mortgage which is intended
merely as a security, prefer one creditor, uses the following
language: "So that in all of these cases, where the instrument
assailed as contrary to section 2014 [now section 2146] does
not, in its form, violate that section, having ear-marks that
cannot be mistaken, the question must hinge upon the intent
of the parties.    Is the paper a *bona fide* mortgage intended as

a security, which the law allows? Or was it intended as an assignment, in which the particular creditor is preferred—the form of the paper having been adopted to evade the act? This question, in such a case, becomes a question of fact, and such is the case now before the court." The court then goes on to consider this question of fact, and agreeing with the Circuit Judge that there was no such intent, sustained the mortgage.

In *Meinhard* v. *Strickland*, 29 S. C., at page 496, the court, in considering a case like the present, used the following language: "It is plain, then, that in cases of this kind the question is mainly one of fact as to the *intention* of the parties. If the instruments employed were *bona fide* intended merely as security, and not as a means of evading the provisions of the assignment act, then they do not fall within the purview of that act. But if, on the contrary, the instrument resorted to, *whatever may be their form*, were intended, not merely as security, but as a means of transferring the debtor's property to the favored creditor to the exclusion of others, with a view to evade the provisions of the assigment act, then they must be regarded as null and void under the provisions of that act." And the court goes on to notice the cases of *Verner* v. *McGhee*, 26 S. C., 248; *Lamar* v. *Pool, supra*, and *McGovern* v. *Richard*, 27 S. C., 272, where the attack upon the transactions there assailed failed because of the failure to show any such intent in either of those cases. As it is well expressed in *Verner* v. *McGhee, supra:* "The assignment act has no application, unless there is either an actual assignment, or a state of facts, fully proved or admitted, which, in conscience and equity, are tantamount to an assignment with unlawful preferences." In *Putney* v. *Friesleben*, 32 S. C., 492, the same doctrine was fully recognized and acted upon.

To the same effect, see *McIntyre* v. *Legon*, 38 S. C., where, at page 463, in delivering the opinion of the court, Mr. Justice McGowan lays down the rule in the following language, quoted with approval from the separate opinion in *Austin, Nichols & Co.* v. *Morris, supra:* "I do not doubt that an insolvent debtor may, by a *bona fide* mortgage, which is intended merely as a security, prefer one creditor; yet if the mortgage is designed,

not as a security, but as a means of transferring his property to one or more of his creditors in preference of others, it seems to me that it is, in effect, though not in form, an assignment, and comes within the mischief intended to be suppressed by section 2014 of General Statutes." After thus laying down the rule, the learned justice proceeds as follows: "Taking this as our guide, let us apply the rule to this case. The question is really one of fact. The referee found that the mortgages were not intended by Legon to operate as an assignment of his property, but were honestly executed for the purpose of protecting Catherine Legon, as a *bona fide* creditor. The Circuit Judge concurred in this finding, and, under the well known rule of this court, it will not be disturbed," &c. And the mortgages were sustained. To same effect, see *Monaghan Bay Co.* v. *Dickson*, 39 S. C., 146.

The case of *Mann* v. *Poole*, 18 S. E. Rep., 145, reported, also, in 49 S. C., p. 1, comes next in order. That case seems to be relied on by counsel for respondents, as shaking, or at least qualifying, the doctrine uniformly recognized in the series of cases above cited, by laying down as the true test in all such cases as the present, the result of an inquiry whether it was the intention of the insolvent debtor, in giving the mortgage assailed, honestly to secure one or more of his creditors, or was it his purpose thereby to give one or more of his creditors a preference over other creditors. This view is based upon a partial quotation from the opinion of Mr. Justice Pope in that case; but when the whole passage is read, and especially, when the real nature of that case is considered, together with the subsequent remarks of the learned justice, it will at once be seen that such view is based upon an entire misconception, and that the decision in that case in no wise conflicts with or qualifies any of our former decisions. The entire passage in the opinion reads as follows: "It is no longer profitable, in the light of the repeated adjudications of this court on the subject, to consider the right of an insolvent debtor to give a mortgage to one or more of his creditors, when it is intended that such a mortgage or mortgages shall operate as mere securities to secure such creditor or creditors *bona fide*. In the light of our de-

cisions, whenever it becomes necessary to canvass the transactions of insolvent debtors with their creditors, *who are preferred by receiving a lien upon such insolvent debtor's property to the exclusion of all other creditors, so as to determine whether such preferences are obnoxious to the provisions of chapter 72 of our General Statutes,* the crucial test is this: was it the intention of the insolvent debtor to honestly secure the debt of one or more of his creditors, by giving a judgment, or a mortgage, or an assignment of certain choses in action, or was it his purpose *thereby* to give one or more of his creditors a preference over other creditors? Thus the intention of the insolvent debtor must be ascertained, and this presents a question of fact."

Now, when it is remembered that whenever an insolvent debtor gives to one of his creditors a mortgage upon the whole, or even a part of his property, he necessarily gives such creditor a preference over his unsecured creditors; and as a man is always presumed to intend the necessary consequence of any act which he may do, it is very obvious that the question of fact mentioned in the foregoing quotation never could arise, if the language there found should be construed as counsel for respondent claim it should be; for as soon as it appeared that the insolvent debtor had made a mortgage to one of his creditors, it would at the same time appear that he had preferred one of his creditors; and hence, the question of fact, whether he had made the mortgage with intent to prefer a given creditor, never could arise. It is obvious, therefore, that the true meaning of the passage quoted is that in all such cases the question is just what it is stated to be in the foregoing cases, there manifestly referred to, though not named: Was it the intention of the insolvent honestly to secure one of his creditors, or was it his purpose *thereby* to prefer one of his creditors, in violation of the assignment law, by resorting to a mortgage instead of a formal assignment, and thus to evade the provisions of that law? This, it seems to us, is shown by the language in the quotation which we have italicized, as well as by the express recognition of the preceding cases; for otherwise we would be compelled to infer that the intention was to overrule such

cases, and this certainly could not be said with the least show of propriety.

Our view of the true meaning of that decision is still further confirmed by the fact, that Mr. Justice Pope, after laying down the law as above quoted, proceeds to inquire whether the mortgages then in question, made just about ninety-one days before the execution of the deed of assignment by Dr. Poole, the insolvent debtor, were not parts of the same scheme, culminating in the deed of assignment, whereby Dr. Poole attempted to prefer his wife and grand-children at the expense of his other creditors, and showing clearly that such was the fact, announces his conclusion in the following emphatic terms: "To expect any man to believe that Dr. Poole did not systematically contrive this result is asking too much of human credulity." Now, if it was intended by that decision to declare that, to declare the law to be that, the only question in such a case would be whether the mortgages were given with intent to prefer one or more creditors—a question which, as we have seen, is no question at all—then where would be the necessity or even the propriety of entering upon the inquiry to which we have just referred? It is clear that the case of *Mann* v. *Poole* does not in any way conflict with any of the previous decisions, and was not designed to controvert or even qualify any of the principles established by such decisions.

The last case upon the subject is *Mitchell* v. *Mitchell*, 42 S. C., 475. In that case a mortgage was attacked upon two grounds: 1st. That it was given with intent to hinder, delay, and defeat other creditors, in violation of the Statute of Elizabeth. 2d. That it was intended to be a transfer of the whole, practically, of the insolvent debtor's estate to the mortgagee, who was the wife of the debtor, and, therefore, void under the assignment law. The facts necessary to sustain both of these grounds were found both by the Circuit Judge and by this court, and, therefore, the mortgage was held void upon both grounds. It is obvious, therefore, that Mitchell's case, in which the opinion was delivered by the same justice who prepared the opinion in *Mann* v. *Poole, supra*, is in line with all the previous cases hereinbefore cited; for in that case one of the points upon which the question

13—44

turned, as to whether the mortgage was invalid under the assignment law, was whether the mortgage was given to secure an honest debt, or whether it was intended as a means of transferring the whole, or practically the whole, of the debtor's property to the mortgagee, to the exclusion of other creditors.

From this review of the cases upon the subject in this State, the following propositions, applicable to the case under consideration, are clearly deducible: 1st. That an insolvent debtor may, by a *bona fide* mortgage, which is intended merely as a security for a just debt, prefer one of his creditors. 2d. That if the mortgage is really designed to operate not as a security merely, but as a means of transferring the debtor's property to the favored creditor, in preference of the other creditors, then it is void under the assignment law. 3d. That the question as to what was the intention is a question of fact.

Applying these propositions to the case under consideration, it seems to us clear that the conclusion reached by the Circuit Judge cannot be sustained. There is no finding of fact, and testimony upon which such a finding could be based, that the mortgage was intended to operate as a means of transferring the debtor's property to the mortgagee. On the contrary, the referee finds the other way, and his conclusion is abundantly sustained by the testimony. This finding *of fact* by the referee is not overruled by the Circuit Judge, though he does differ with the referee as to his conclusion of law. All that he says upon the subject is: "I hold and adjudge that said mortgage was an assignment by Robert W. Stricker, made to the defendant, M. J. Coleman, with intent to prefer her over Stricker's other creditors, and was in violation of section 2014 of the General Statutes of this State, and is null and void." But his honor did not find, as a fact, that the mortgage was intended to operate as a transfer of the debtor's property, and we do not see any testimony which would warrant any such finding. On the contrary, it seems to us that the whole testimony points clearly to the conclusion that the sole object of giving the mortgage, was to secure an honest debt due to a very indulgent creditor, for a part of which she held a superior lien, and another part of which was for money then loaned to

the debtor to carry on his. business. The subsequent conduct of the parties negatives the idea that there was any intention that the mortgage should operate as a transfer of the property, for the conceded fact is, that the debtor was permitted to retain the possession and use of the mortgaged property for more than three months after the maturity of the mortgage debt.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the complaint dismissed.