## MOORE et al. v. MOORE et al.
### Civil Action No. 666.

District Court, E. D. South Carolina, Florence Division.

Aug. 12, 1942.

---

Tison & Miller, of Bennettsville, S. C., for plaintiffs.

Willcox, Hardee, Houck & Wallace, of Florence, S. C., for defendant Armour & Co.

WARING, District Judge.

The above matter was heard by me without a jury. Upon the call of the case the attorneys for the plaintiffs moved that R. D. Miller, as Trustee, be joined as a party plaintiff, he being the assignee of five certain judgments. · No objection being made, this motion was granted and R. D. Miller, as Trustee, is, therefore, joined as a plaintiff in this cause. A stipulation of facts was thereupon filed, considerable documentary evidence introduced and the testimony of certain witnesses was heard in open court.

This case is one where the original plaintiffs are seeking to foreclose a mortgage given to them by their deceased mother, Mrs. Maggie M. McLean. The defendant, Armour Fertilizer Works, Inc. (formerly Armour & Company), is one of the defendants alleged to have some interest in the property by reason of a judgment. This defendant hereafter referred to as Armour, caused the case to be removed to the United States Court from the Court of Common Pleas of Marlboro County and filed an answer wherein it set forth that it had heretofore obtained a judgment against Mrs. Maggie M. McLean, and made the further allegation that the mortgage was not given in good faith and prayed that the said mortgage be set aside and that the property be made responsive to the Armour judgment. The newly made plaintiff, R. D. Miller, claims an interest in the matter by reason of five judgments heretofore obtained against the said Mrs. McLean, all of which judgments have been assigned to him as Trustee. His position is that if the mortgage should be declared invalid that he, as the holder of said judgments, should be entitled to rank along with Armour.

In considering this matter it is important at the beginning to fix certain dates. It appears that in the year 1931

Mrs. McLean was engaged in farming, her business affairs being handled by her son, James D. Moore. A considerable amount of fertilizer was purchased from Armour and Mrs. McLean having failed to meet her obligations Armour began pressing its claim and finally commenced suit. Mrs. McLean owned a number of different tracts of land. In the early part of 1931, that is on April 17th of that year, Mrs. McLean gave a mortgage on a tract of land containing approximately 270 acres. This mortgage was to S. S. Tison, as Attorney, and was to secure certain indebtednesses due to Mr. Tison and to five other of her creditors, namely: Virginia-Carolina Chemical Company, South Carolina National Bank, C. L. McCormac, Douglas & Breeden and Enterprise Hardware Company. The indebtednesses secured by this mortgage amounted to approximately $4,000. It appears that Mrs. McLean owned two other tracts of land, one containing approximately 40 acres and the other approximately 60 acres, and she also had another tract of land, which, however, was subject to a life interest.

It appears from the testimony that negotiations were had with a view to having Armour accept a mortgage on one of the unincumbered tracts of land, that is to say: The 40 acre or the 60 acre tract, so that the other properties would be clear, but after some negotiations Armour turned down this offer and instituted suit. The suit was commenced in the United States Court for the Eastern District of South Carolina on November 3, 1931. The suit was not contested and a default judgment was taken and Armour's judgment was entered in the office of the Clerk of this Court on December 19, 1931, the said judgment being for the sum of $3,202.62, with $200 attorneys' fees and costs.

In the meantime after the institution of the Armour suit, but before judgment was rendered, that is to say, on November 16, 1931, Mrs. McLean gave a mortgage covering all of her then unincumbered property, the same consisting of the 40 acre and the 60 acre tracts of land, as well as all of her interest and estate in another tract known as "Tract Number One", which it appears is subject to an outstanding life estate. This mortgage recites a bond given by Mrs. McLean to Vivian Moore, Margaret Moore and James Moore, her three children, and is conditioned for the payment of $17,405.94, with

interest at 6% per annum. There is no maturity date stated. However, the bond itself, which is in evidence, shows that the indebtedness was to mature two years from the date of the bond, which is the same date as that in the mortgage. Both bond and mortgage set out the respective amounts that each child was entitled to of the $17,405.94, and the mortgage contained this clause: "This mortgage is made to secure the mortgagees for the sums before stated; but is not intended in any way to release any other claims or rights they have against any other person or bonding company by its acceptance; nor is it intended as representing the entire amount that I am due my children."

Reading the foregoing excerpt and in the light of the testimony, which will hereinafter be referred to, it appears that the mortgagor intended to state that this was not the entire amount that she owed to her children and it also appears to contemplate that there might be a claim against some other person or bonding company. It will be subsequently noted that Mrs. McLean was then guardian for her three children and had given a guardianship bond.

In April, 1932, a suit was commenced by S. S. Tison, as Attorney, to foreclose the mortgage which he held over the 270 acre tract of land. Judgments were obtained for the amounts due the respective parties for whom Mr. Tison held this mortgage and the premises were sold and bid in by Mr. Tison, who took possession of same, collected some rentals and later sold the property for the sum of $3,000. Mr. Tison in effect acted as trustee for the various parties interested and undoubtedly handled the matter quite capably. He bid in the property at the foreclosure sale, but did not take title as the country was then in the midst of a serious financial depression and he managed the property, collected rentals and later when property became more valuable effected a sale and had a deed made directly out of the court to the new purchaser. The proceeds were disbursed by payment of taxes and costs and the various judgment creditors received approximately Fifty per cent of their respective claims. The balance of the claims of Virginia-Carolina Chemical Company, South Carolina National Bank, C. L. McCormac, Douglas & Breeden and Enterprise Hardware Company, were assigned to R. D. Miller, Trustee,

the trust being undisclosed. As Mr. Tison was acting for Mrs. McLean and later for her estate, it would appear that these assignments were for her benefit and there is nothing to show that any one else put up any money to acquire them. The attorneys for Armour contend that these assignments of judgments must necessarily be held for the benefit of Mrs. McLean and after her death for her estate, and they therefore could not be set up against the Armour judgment. The plaintiffs claim that Mr. Miller as Trustee is holding the judgments for the benefit of the children and that if the mortgage is to be set aside they would come in to share with Armour in the enforcement of their judgment claims.

As above stated, Maggie M. McLean was the duly appointed guardian of her three children. She had given bond as such guardian with the United States Fidelity & Guaranty Company as surety. On February 6, 1933, the Judge of Probate for Marlboro County, probably at the instance and certainly for the benefit of the three children of Mrs. McLean, instituted an action in the Court of Common Pleas for Marlboro County. This cause is entitled "Julian G. McLaurin, Judge of Probate for Marlboro County, vs. Maggie Adams Moore McLean and United States Fidelity & Guaranty Company", and will be found in Judgment Roll 1131, in the office of the Clerk of Court for Marlboro County. This suit calls for an accounting by the guardian and alleges that she had failed to make proper reports to the Probate Court and that she was indebted in large sums to her children and prayed for an entire accounting and judgment in such amounts as may be found to be due. The defendant bonding company filed an answer, but Mrs. McLean appears not to have answered. Apparently negotiations were entered into and settlements agreed upon. The three children had now come of age. An order was filed in the said cause and will be found in the judgment roll hereinabove set forth. This order was signed by the Judge then presiding in the Court of Common Pleas for Marlboro County and was consented to by Messrs. Tison & Miller, attorneys for the plaintiff, and by the three interested children, namely: Vivian A. Moore, Margaret Moore and James D. Moore. The order is not dated, but the judgment roll was filed on May 3, 1935,

and that was apparently the date when the order was filed in the court. This reads as follows:

"This is an action brought against a guardian and her bondsmen for an accounting for her conduct and management of the assets of her wards. It appears that she was some years ago appointed guardian for Vivian Moore, James D. Moore and Margaret Moore, that all of said wards, who are the children of the guardian, have reached their majority and consent to this order. The parties to the action have agreed upon a settlement for the sum of Twenty-three Hundred Fifty ($2350.00) Dollars which is also agreeable to the wards.

"It is, therefore, ordered, that the same be confirmed and made the judgment of this Court. It is further ordered that the guardian, Mrs. McLean, shall be deemed to have fully accounted for all moneys, and she is hereby discharged as such guardian, and the bond given by her co-defendant, United States Fidelity & Guaranty Company, a corporation, as surety, is declared to be satisfied and ended, and this action is also declared to be dismissed."

An examination of the pleadings in this case fails to show any reference to a mortgage or any other security ever having been given by Mrs. McLean to or for the benefit of her children. It would seem from the terms of the mortgage hereinabove quoted and referred to that if there was an indebtedness by Mrs. McLean to her children it was because of the guardianship account. In this suit brought for the purpose of an accounting in the guardianship matters there is no reference to any security, or in fact, any mention of the bond or the mortgage. The answer does not set up that any security or conveyance was ever made and the order merely recites the fact that a settlement has been reached in the sum of $2,350. It will be found that the mortgage recites an indebtedness of something over $17,000. The terms of the above order distinctly state that Mrs. McLean shall be deemed to have fully accounted.

On November 25, 1941, the case at bar was commenced. The prayer of the complaint was for the foreclosure of the mortgage in issue and Armour was made a party as one alleged to be claiming some interest in the matter. Armour by answer dated December 4, 1941, set up its judg-

ment and prayed that the mortgage be declared null and void and that the same be set aside and that its judgment be declared a first and prior lien in the premises. By appropriate proceedings the case was removed to this court because of diversity of citizenship. It will be noted that this answer was within the ten year period of the life of the judgment, but as this time would have shortly expired Armour applied to this court for a revival of the judgment and it was revived by order filed by the Honorable C. C. Wyche, then presiding in this court, on December 4, 1941. The petition for revival recited that Mrs. McLean had died since the judgment was obtained in the original cause and the revived judgment and the lien of same were continued against the representatives of the McLean estate.

The salient points for decision in this cause are:

One. Was the mortgage given by Mrs. McLean to her three children fraudulent and void?

Two. Assuming that it was not fraudulent and void and that there was a valid indebtedness, did the mortgage amount to a fraudulent assignment of her property for the benefit of her children in preference to her other creditors and particularly Armour?

Three. What was the effect of the suit and the settlement and order in the case of McLaurin, Judge of Probate against Maggie Adams Moore McLean et al.?

Four. If the mortgage be declared invalid, shall the judgments held by the new party plaintiff, R. D. Miller, as Trustee, be for the benefit of the plaintiffs or for the benefit of the estate?

Five. If the mortgage be declared invalid and if these judgments be held for the benefit of the plaintiffs, are they entitled to share equally with Armour or is Armour entitled to a priority because of its diligence in litigating and setting aside the mortgage?

■ One. The first question is as to whether there was sufficient proof of an indebtedness to secure which the mortgage was given. Mr. Tison testified that Mrs. McLean had told him that there was such an indebtedness. As Mr. Tison himself said, his testimony was pure hearsay being based on conversations with Mrs. McLean and it does not seem to me to be sufficient to convince the court that there was such an indebtedness. The plaintiffs did not testify. There was no word from James D. Moore, who looked after and attended to his mother's affairs. There is no other evidence to support the bond and mortgage. The statement in the mortgage that Mrs. McLean is indebted to her children adds nothing to the bald admission of indebtedness furnished by the bond and recited by the mortgage. I think that there must be something more to prove the indebtedness than the mere fact that a bond and a mortgage were given reciting an indebtedness. It will be noted that the testimony shows that Mrs. McLean satisfied one group of her creditors by a mortgage of a tract of land containing 270 acres. These creditors afterwards put their claims into judgments. It is shown that she attempted to settle with Armour by giving a mortgage on a portion of her remaining real estate. There was no representation at that time that she was indebted to the children or that she had to take care of what she owed them on a parity with the Armour debt. In fact, there is nothing to show that Armour was ever advised that Mrs. McLean owed her children anything at all and as a matter of fact, the only indebtedness it was aware of were the debts due to the Virginia-Carolina Chemical Company and the other creditors in that group who had been secured by the mortgage to Mr. Tison. Considerable has been said in the arguments and testimony as to Mrs. McLean attempting to be fair with Armour by offering security and that the blame for not collecting the Armour debt is upon its own shoulders in that it exercised bad judgment. It is very probable that this is true. In retrospect it may well be said that Armour would have been much better off by accepting a mortgage on one of these tracts of land many years ago. By this time it could have foreclosed and realized at least a substantial part of the indebtedness. However, in this cause it is not for this court to say whether or not Armour used good business judgment or failed to exercise the same. It was under no obligation to accept what at that time it apparently thought was not a good offer. Instead of taking security on one tract of land and freeing the other property it determined to try to enforce the payment of the entire indebtedness and commenced suit. Almost immediately Mrs. McLean executed a bond secured by a mortgage for an alleged indebtedness to her three children, which indebtedness had never been disclosed to Armour; and this

mortgage was executed and recorded before Armour could obtain and file its judgment. It appears to me that the plaintiffs have failed to sustain by sufficient and satisfactory evidence that this indebtedness was a valid outstanding obligation sufficient to sustain the validity of the mortgage. A very significant fact in connection with this entire matter is that the business affairs of Mrs. McLean appear to have been handled almost exclusively by her son, James D. McLean, he being the party who furnished financial statements and had charge of the farming operations. He failed to disclose to Armour any indebtedness due him or his sisters and yet he was a party to, and accepted a mortgage from, his mother securing a sum of money, which was very large in comparison with the other indebtednesses and obligations. No attempt was made to enforce the terms of the bond or foreclose the mortgage during the lifetime of Mrs. McLean.

For the foregoing reasons in addition to the matters set forth and hereinafter discussed under the Third question (namely, the matter of the suit by the Probate Judge), I have reached the conclusion that there is not a valid existing indebtedness to support the mortgage.

[2] Two. The next question arising is whether or not the giving of this mortgage was in effect an assignment in violation of the Statutes and law of South Carolina even if there was a valid indebtedness from Mrs. McLean to her children. As above shown it is apparent that Mrs. McLean had incumbered certain of her property and that her unincumbered real estate consisted of the 40 and the 60 acre tracts and an interest in another tract of land whereon there still remained the charge of a life estate. The mortgage which she gave covered all of this property; in other words, all of her property remaining after giving the mortgage covering the 270 acre tract. There is in the testimony an approximate valuation of $3,000 of these tracts of land covered by the mortgage and it was given to cover a supposed indebtedness of something over $17,000, besides which she of course owed Armour about $3,000. Under these circumstances there is no question but that Mrs. McLean was insolvent and the giving of this mortgage was in effect an assignment such as is contemplated by Section 9106 of the 1932 Code of South Carolina.

See Porter v. Stricker, 44 S.C. 183, 21 S. E. 635. See, also, Allgood v. Allgood, 134 S.C. 233, 132 S.E. 48, 53, wherein the Supreme Court of South Carolina says: "There is no doubt that Allgood was trying to secure a debt due his father's estate by giving a mortgage to his father of his entire property so that his own people should profit thereby to the exclusion of the general creditors."

In the two above referred to cases numerous citations of authority are given to sustain the views therein and herein expressed. The mortgage in this case is substantially the same as a voluntary deed given under like circumstances. The following quotation seems to me particularly apt: "A voluntary deed may be set aside at the instance of an existing creditor upon the ground of constructive or legal fraud, even where there is not the slightest taint of actual or moral fraud in the transaction, under the principle that the law requires that one must be just before he is generous. The law will not permit one who is indebted at the time to give his property away, provided such gift proves prejudicial to the interest of existing creditors. The motive which prompts the donor to make the gift is wholly immaterial. If the donor is indebted at the time, and the event proves that it is necessary to resort to the property attempted to be conveyed away by a voluntary deed for the purpose of paying such indebtedness, the voluntary conveyance will be set aside, and the property subjected to the payment of such indebtedness, upon the ground that it would otherwise operate as a legal fraud upon the rights of creditors, even though it might be perfectly clear that the transaction was free from any trace of moral fraud. While, therefore, it is neither charged nor proved that there was any actual or moral fraud in this transaction between mother and son, on the part of either of them, yet as it does conclusively appear that the mother was indebted at the time she made this apparently voluntary deed, and as the event has proved that it is necessary to resort to the property conveyed by such deed, in order to secure the payment of such indebtedness, the only question in the case, as was said by Judge Norton in the outset, is whether this deed of Emily Cooper to her son was voluntary". Jackson v. Lewis, 34 S.C. 1, 12 S. E. 560, 562.

Three. The Third question relates to the guardianship suit. As above shown, a

336

suit was brought in the Court of Common Pleas for Marlboro County by the Judge of Probate against Mrs. McLean for an accounting in her guardianship affairs. The question before the court is as to the effect of this suit. I have examined the pleadings in this cause and the order ending it. No where does there appear any reference to any security or bond or mortgage heretofore given and the alleged indebtedness of over Seventeen Thousand Dollars seems to have been distinctly negatived by the fact that the case was ended and settled upon the payment of $2,350. I think that this suit throws considerable light on question Number One. It does add something to the claim that there was an outstanding indebtedness existing. On the other hand, it is strong negative testimony as to this indebtedness amounting to as much as $17,000 as set forth in the bond and mortgage. In addition it strongly negatives the validity of the mortgage because if this was a valid mortgage it would have been proper and perhaps necessary to have rendered an accounting in regard to this mortgage in this suit. But no where is there any reference to such a mortgage and the suit was instituted, answered and settled, without the mortgage in any way appearing and the absence of any reference to it would strongly indicate that the parties did not consider it valid or in any way securing or being connected with the alleged indebtedness. The foregoing observations really relate more particularly to question Number One, which I have hereinabove treated.

But the vital point is what was the effect of this suit, assuming that there had been an indebtedness at the time of giving the mortgage. The suit does not disclose just when the indebtedness arose, but generally asks for an accounting. A good and valid guardianship bond was in existence. There is no question as to the financial standing of the surety and if there was any indebtedness due by Mrs. McLean as guardian the surety bond is responsible for it. If Mrs. McLean or her surety had seriously considered that the outstanding mortgage was security for these indebtednesses, surely this would have been advanced in answering the allegations in the suit. But no mention of same is made and the surety company claims that Mrs. McLean was not indebted to her children.

Irrespective of the various contentions of the parties, however, they met and effected a compromise and the order filed in the proceedings in the Court of Common Pleas for Marlboro County, which is hereinabove set out in full, distinctly finds that the guardian, Mrs. McLean "shall be adjudged to have fully accounted for all moneys." Both Mrs. McLean and the bonding company are released and discharged from any further liability. Here we have a complete final adjudication between Mrs. McLean and her three children. By this time the children had all come of age and they signed their consents to this order. In my opinion this discharge and satisfaction of the claims of the children against their mother effectually ends the matter. How can they attempt to foreclose a mortgage given as security for an alleged indebtedness when "all moneys" which may have been due by Mrs. McLean to her children have been "fully accounted for" in this suit. Even if there was a valid indebtedness at the time when the mortgage was given, and even if I be wrong in deciding this mortgage amounted to an illegal assignment, I am of the opinion that the suit by the Probate Judge and the order ending the same closed and satisfied all indebtednesses between the respective parties.

Four. The next question is as to the status of the judgments which were assigned to Mr. R. D. Miller, as Trustee. As I have heretofore outlined, a mortgage was given to S. S. Tison, as Attorney, to secure certain creditors and as a result of foreclosure proceedings these creditors obtained judgments and the security being sold they realized about fifty per cent of their respective claims. Five of these judgments after such part payments were later assigned by the respective owners to R. D. Miller, as Trustee. There is no declaration of trust and no disclosure of the beneficiaries of such trust. What little testimony there is on the subject would indicate that this settlement with the judgment creditors was made for the benefit of Mrs. McLean and her estate. There is no evidence that the children furnished any funds to purchase these judgments and the only evidence is that Mr. Tison, who handled this matter quite efficiently, was able to get approximately fifty per cent for these creditors and at the same time benefit his client, Mrs. McLean, by obtaining an assignment of the judgments to his partner as Trustee. It would, therefore, seem that the only logical inference to be drawn from the settlement in this cause is that Mr. Miller, as Trustee, held these judgments

for the benefit of Mrs. McLean's estate and if that be so of course the judgment held by Armour would come ahead of the judgments against the estate held for the benefit of the estate itself.

Five. Having decided these matters as above set out, it seems hardly necessary to pass upon the Fifth and remaining question. However, the parties are entitled to the judgment of this court on all issues and, therefore, the question of priority of the respective judgments will be briefly discussed. This discussion is based upon the supposition that the judgments held by R. D. Miller, as Trustee, are held for the benefit of the children and not of the estate, a matter which I have expressly decided contrary to this contention. However, assuming that such a state of facts is sustained by the evidence, the question has now arisen as to whether these judgments are on a parity with or come ahead of or behind the Armour judgment. It will be noted that the answer of Armour in this case was filed within the period of ten years from the date of the entry of judgment and I am, therefore, of the opinion that the suit is based on the original judgment and not on the revival, the latter being had to keep the judgment alive so that it would be a valid judgment irrespective of the outcome of the issues in this cause. Armour was made a party to this foreclosure suit, filed an answer and set up an affirmative defense asking that the mortgage be declared invalid and set aside, and removed the cause to this court. Armour has vigorously contended for its rights and is attempting to collect on its judgment. On the other hand, the other judgment creditors who had it appears assigned their judgments to R. D. Miller, as Trustee, were never parties to the suit and Mr. Miller was not made a party. The plaintiffs did not seem to have considered that either they or Mr. Miller had any rights as judgment creditors and it was only when the case came on for a trial that these judgments first appeared and Mr. Miller as Trustee was allowed to intervene and become a party plaintiff. Under such circumstances I think the law is well established that a judgment creditor who seeks and finds assets, who takes steps to enforce his rights and who conducts litigation to set aside alleged incumbrances or assignments is entitled under the broad doctrines of equity to an equitable preference in the proceeds to be derived from the realization of funds so discovered and brought to light and made available. This likewise applies to the judgment in favor of Mr. Tison who though made a party defendant has not attacked the mortgage or endeavored to collect his claim. These doctrines are amply sustained by numerous cases in this State and in this jurisdiction.

See Gardner v. Coker, 184 S.C. 190, 192 S.E. 151; Freedman's Savings and Trust Company v. Earle, 110 U.S. 710, 4 S.Ct. 226, 28 L.Ed. 301, and the numerous cases and authorities therein cited.

For the reasons and considerations hereinabove set forth, I make the following findings:

### Findings of Fact

1. There was not a valid existing indebtedness between Maggie M. McLean (sometimes known as Mrs. D. W. McLean), and Vivian Moore, Margaret Moore and James Moore (sometimes known as James D. Moore), as alleged in the bond and mortgage dated November 16, 1931, which is the subject matter of foreclosure in this suit.

2. The above set forth mortgage of Maggie M. McLean (sometimes known as Mrs. D. W. McLean), to Vivian Moore, Margaret Moore and James Moore (sometimes known as James D. Moore), was executed and given as an assignment of all the unincumbered real estate of the mortgagor in violation of Section 9106 of the Code of Laws of South Carolina.

3. The suit of Julian G. McLaurin, Judge of Probate for Marlboro County, v. Maggie Adams Moore McLean and United States Fidelity & Guaranty Company concluded and settled all questions of indebtedness between the respective parties thereto.

4. The judgments held by R. D. Miller as Trustee were received and are held by him for the benefit of the estate of Mrs. Maggie M. McLean.

5. Armour Fertilizer Works, Inc., has exercised due diligence in ascertaining assets and in litigating this case with a view to the payment of the judgment owned by it.

### Conclusions of Law

1. The bond and the mortgage dated November 16, 1931, by and between Maggie Moore McLean (Mrs. D. W. McLean), and Vivian Moore, Margaret Moore and James Moore (James D. Moore), was and is invalid and must be set aside and declared cancelled.

2. The mortgage hereinabove referred to was an assignment in violation of Section 9106 of the Code of Laws of South Carolina and as such must be set aside as a fraudulent conveyance and assignment.

3. All matters in issue between Maggie Moore McLean and her three children, the plaintiffs in this cause having been duly settled in the suit of Julian G. McLaurin, Judge of Probate for Marlboro County, hereinabove referred to, I find that there is no indebtedness to the said parties by the Estate of Maggie Moore McLean.

4. The judgments held by R. D. Miller, as Trustee, being acquired and held by him for the benefit of the estate of Mrs. Maggie Moore McLean can not be set up as claims against the said estate.

5. Armour Fertilizer Works, Inc., having shown due diligence in pressing the collection of its judgment and having uncovered assets for the benefit of the judgment creditors is entitled to an equitable preference in the payment of its judgment from such assets superior to the claims of any other parties in this cause.

An order will be filed carrying into effect the foregoing views and opinions.